**METERLOGIC, INC., a Florida corporation, Plaintiff,**

v.

**COPIER SOLUTIONS, INC., a Missouri limited liability company, Telemetry Solutions, Defendants.**

No. 99–7131–CIV.

United States District Court, S.D. Florida.

Jan. 15, 2002.

**1294**

Stephen Howard Reisman, Pecker Abramson Rosenberg Reisman & Stein LLP, Miami, FL, Nicholas L. DiVita, Berkowitz Feldmiller Stanton Brandt Williams & Shaw LLP, Kansas City, MO, plaintiff.

Robert W. Turken, Bilzin Sumberg Dunn Baena Price & Axelrod, Miami, FL, Mark A. Olthoff, Shughart Thomson & Kilroy, P.C., Kansas City, MO, for Copier Solutions and Telemetry Solutions.

## ORDER GRANTING RENEWED MOTION TO TRANSFER

GOLD, District Judge.

**THIS CAUSE** is before the court upon the plaintiff's motion to sever defendants' counterclaim and/or renewed motion for voluntary dismissal of action without prejudice and/or renewed motion for transfer (DE # 218). The primary relief sought by the plaintiff in this motion is a transfer of this case from the Southern District of Florida to the Western District of Missouri pursuant to 28 U.S.C. §§ 1404, 1406, and 1631. The court has reviewed the parties' arguments and, for the reasons stated below, has determined that a transfer of this case is warranted.[1]

### Factual Background and Procedural History

#### I. The Case as Originally Filed

In August of 1999, the plaintiff, Meterlogic, Inc. ("Meterlogic"), a Florida corporation, filed suit against the defendants, Copier Solutions ("CS"), a Missouri limited liability company, and Telemetry Solutions ("TS"), a Delaware limited liability company ("collectively, the defendants"). The defendants' corporate parents, KLT Telecom, Inc. ("KLT"), a Missouri corporation; KLT, Inc. ("KLT, Inc."), a Missouri corporation; and Kansas City Power and Light Co. ("KCPL"), a Missouri corporation, also were joined as defendants in the original and the amended complaints. Meterlogic's

---

1. Because the primary relief sought by the plaintiff is being granted, the plaintiff's requests for severance and voluntary dismissal are not addressed in this order.

amended complaint contained the following counts: count I, fraud (against CS, TS, KLT, KLT, Inc., and KCPL); count II, negligent misrepresentation (against CS, TS, KLT, KLT, Inc., and KCPL); count III, promissory estoppel (against CS, TS, KLT, KLT, Inc., and KCPL); count IV, indemnity (against CS and TS); count V, breach of contract (against CS and TS); and count VI, piercing the corporate veil (against KLT, KLT, Inc., and KCPL). Subject matter jurisdiction exists over this case pursuant to 28 U.S.C. § 1332.

In its amended complaint, Meterlogic claimed monetary damages in the amount of $50,000,000.00 for CS's and TS's breach of contract, fraud, and misrepresentations. It alleged that officers of CS and TS induced Meterlogic to enter into three related agreements by misrepresenting the economic and technological support that KLT, KLT, Inc., and KCPL (the "corporate parents" of CS and TS) would provide their business venture. Meterlogic sought to hold KLT, KLT, Inc., and KCPL liable for their subsidiaries' misrepresentations.

On September 27, 2000, this court entered an order on the defendants' and corporate parents' motions to dismiss. In addition to dismissing count IV, which had been filed against CS and TS, the court held that it lacked personal jurisdiction over KLT, KLT, Inc., and KCPL due to their insufficient contacts with the state of Florida. As a result, the corporate parents' motion to dismiss was granted, and CS and TS remained as the only defendants in this case.

## II. Meterlogic's First Motion to Transfer

Sometime after the corporate parents were dismissed from this case, Meterlogic learned that CS and TS were insolvent. As a result, in May of 2001, it filed a motion to transfer this case to Missouri, where the defendants and their corporate parents are incorporated, pursuant to 28 U.S.C. §§ 1404, 1406, and 1631. Alternatively, Meterlogic moved for a voluntary dismissal without prejudice under Federal Rule of Civil Procedure 42(a)(2). In its motion, Meterlogic argued that it would be futile for it to pursue its claims against the defendants in this jurisdiction. Because the defendants were empty, shell corporations of their parents, Meterlogic effectively would recover nothing from them if it prevailed on its complaint. Rather, Meterlogic would have to file a lawsuit in Missouri against the corporate parents to enforce any judgment it may obtain against CS and TS. This collection action would be in addition to the complaint Meterlogic was planning to file against the corporate parents in the Western District of Missouri for their independent tortious behavior. Meterlogic contended that, rather than prosecuting two separate lawsuits in two jurisdictions, it should prosecute all its claims in Missouri.

On June 21, 2001, the court entered an order denying Meterlogic's motion for voluntary dismissal because the defendants had filed a counterclaim against Meterlogic and had objected to Meterlogic's request for a dismissal.[2] Although independent jurisdiction exists over the defendants' counterclaim, the court found that dismissal of the plaintiff's claim would be inappropriate. As stated in the order, "If the plaintiff's request were granted under Federal Rule of Civil Procedure 41(a)(2), there exists the possibility that the defen-

---

**2.** The defendants' counterclaim is predicated on facts indirectly related to the subject of Meterlogic's complaint. CS and TS claim that they paid Meterlogic for a product that never was delivered to them. Because the parties are diverse, and the amount in dispute exceeds $75,000.00, independent subject matter jurisdiction exists over the counterclaim.

dants would be forced to prosecute their claims in this court and defend against the plaintiffs' [newly-filed] claims in Missouri state and federal courts." Order of 6/21/01 at 2. The court did not rule on Meterlogic's transfer request because Meterlogic had not yet filed suit against the corporate parents in the Western District of Missouri.

After the entry of this order, Meterlogic notified the court that it had filed its complaint against the corporate parents in the Missouri district court in June of 2001. The Missouri complaint asserted essentially the same veil-piercing theory Meterlogic had argued in opposition to the corporate parents' motion to dismiss for lack of personal jurisdiction, but it differed substantially from the amended complaint filed by Meterlogic in this court. The Missouri complaint contained many factual allegations that were not asserted in the amended complaint pending in this jurisdiction.

On July 26, 2001, the court entered an order denying Meterlogic's motion to transfer. It found that adjudicating this case in the Western District of Missouri would not serve the "interest of justice", as required by 28 U.S.C. § 1404(a). Based on the facts that were before this court at the time it entered its order denying transfer, the court found that Meterlogic still had not established an agency relationship between the corporate parents and defendants sufficient to pierce their corporate veil. As stated in the order:

> This finding is significant because, even if the plaintiff were to file suit against the corporate defendants in Missouri (as it has done), the Missouri court will be bound by this court's finding that the corporate parents cannot be held responsible for the defendants' tortious conduct. If, as a matter of substantive law, the corporate veil cannot be pierced, it would be futile for the plain-

tiff to file a claim against the corporate parents in any court, or for this case to be transferred to a court having personal jurisdiction over the corporate parents. Transfer to the Western District of Missouri would result in a needless expenditure of additional time, energy, and money.

Order of 7/26/01 at 3. In effect, Meterlogic's motion to transfer was denied because Meterlogic failed to make the requisite showing under any of the transfer statutes. Additionally, it was asking the defendants to begin defending their case anew in another jurisdiction.

On August 23, 2001, the court entered an order clarifying its order of July 26, 2001, and the order dismissing the corporate parents for lack of personal jurisdiction. The court explained that the dismissal order was limited to the issue of personal jurisdiction over the corporate parents and was not intended to preclude Meterlogic from prosecuting its claims against them in Missouri "based on additional facts that were not before this court at the time it issued its order dismissing" the corporate parents. Order of 8/23/01 at 2. That is, the order of dismissal was based only on the complaint and evidence that was before the court when that order was issued, not the facts as they have been or will be developed through discovery.

## III. The Litigation In This Jurisdiction Has Continued

While the transfer issue was being litigated, CS, TS, and Meterlogic proceeded to commence discovery in this case. On August 15, 2001, the defendants filed a *Daubert* motion to exclude the testimony of Meterlogic's expert and a motion for summary judgment. The defendants requested summary judgment on Meterlogic's claims for fraud, negligent misrepresentation, and promissory estoppel.[3]

---

3. Meterlogic withdrew its claim for breach of contract.

Their summary judgment motion was based on the *Daubert* motion, which argued that the expert's testimony was unreliable to establish lost profits. According to the defendants, if the court excluded the testimony of Meterlogic's expert, Meterlogic would be unable to prove damages, which is an essential element of all of its remaining claims. The defendants argued that, by failing to establish damages, Meterlogic effectively would be unable to establish its claims.

Because the defendants' motions were interdependent, the court held a hearing on October 2, 2001, during which it heard evidence on both motions. During this hearing, it became apparent that the arguments contained in the defendants' motions and the plaintiff's responses were not consistent with the pleadings. Additionally, the damage theory advanced by the plaintiff through its expert witness differed materially from the damage theory pled in the amended complaint. The defendants were discussing lost profits, Meterlogic was discussing lost business opportunities, and the complaint was based primarily on a breach of contract claim that no longer existed. Because each of these theories required different evidence under the applicable case law, on October 4, 2001, the court entered an order holding the *Daubert* and summary judgment motions in abeyance pending further briefing by the parties. Meterlogic also was invited to file a motion for amendment.

■ Meterlogic filed a second amended complaint on January 4, 2002.[4] The defendants did not oppose the filing of this complaint, which rendered moot the parties' previous pleadings and the defendants' summary judgment and *Daubert* motions. Meterlogic asserted the following claims against CS and TS in its second amended complaint: count I, tortious interference with Meterlogic's relationship with Copycomm; count II, fraudulent inducement and deceit; count III, fraudulent concealment and continuing fraud; and count IV, negligent misrepresentation.

Like the amended complaint, the second amended complaint attempts to recover damages incurred from the parties' venture into the remote monitoring business, but the theory of the case and underlying facts alleged in the latter pleading differ substantially from the original complaints. The most significant distinction between the pleadings is that, throughout the second amended complaint, Meterlogic alleges that the corporate parents created CS and TS to insulate themselves from liability in the event they incurred any liability in the remote monitoring business venture and that they maintained CS and TS as undercapitalized shell corporations. The corporate parents' involvement is alleged in almost every paragraph of the second amended complaint. The original and first amended complaint are devoid of similar allegations, but these allegations are essentially identical to those of the Missouri complaint.

Moreover, the second amended complaint relies heavily upon allegations relating to several third parties who were involved with Meterlogic and the defendants in their business venture. For example, the second amended complaint discusses Copier Monitoring Systems, LLC, Copycomm, Inc., and Advance Measurement Solutions, none of which are mentioned in the previous pleadings. These entities' involvement is discussed at great length throughout the second amended complaint. According to the second amended complaint, the defendants and their corporate parents fraudulently purchased the assets of Copycomm in order to disrupt Meter-

---

4. An amended complaint supersedes a previously filed complaint. *See Malowney v. Fed.* *Coll'n Deposit Gp.*, 193 F.3d 1342, 1345 n. 1 (11th Cir.1999).

logic's developing relationship with Copycomm and create their own relationship with Meterlogic. In fact, the second amended complaint contains a count of tortious interference against CS and TS for their alleged interference with the Meterlogic–Copycomm relationship. The previous pleadings do not mention any of the third party entities, such as Copycomm, nor do the original pleadings discuss any fraudulent purchases of assets by the defendants or their corporate parents. The second amended complaint also discusses ownership and development of technology and licensing limitations, which were not mentioned in the other complaints. Additionally, the original complaints do not discuss the valuation performed by outside consultants, yet these allegations constitute a significant portion of the second amended complaint. These are just a few of the differences between the original complaints and the most current pleading, but these distinctions make it evident that this case is now an entirely different one than what originally was pled by Meterlogic.

## IV. Meterlogic's Renewed Motion to Sever

On October 17, 2001, prior to the filing of the second amended complaint, Meterlogic filed the motion that is now under consideration. As in its original motion, Meterlogic contends that this case should be transferred to the Western District of Missouri because trying this case against CS and TS in this jurisdiction would be futile. Meterlogic eventually would have to file an action in Missouri to enforce any judgment it obtains in this court. Additionally, Meterlogic has argued that each of the requirements for a transfer under 28 U.S.C. § 1404 are met in this case.

In opposition to Meterlogic's motion to transfer, the defendants repeatedly contend that the court has "encouraged plaintiff to replead its case and renew its

motion to transfer." Def. Opp. at 2. As discussed in section III, above, this case could not continue as originally pled because Meterlogic's theories of the case and recovery have changed considerably from when this case was originally filed. It would be impossible to try this case on the pleadings as they existed before the filing of the most recent complaint, and the defendants never objected to the filing of the second amended complaint. In fact, they "encouraged" Meterlogic to do so. As such, it was necessary for Meterlogic to replead its case.

As for the defendants' statement that the court encouraged Meterlogic to renew its motion to transfer, it is clear that circumstances have changed considerably between the filing of Meterlogic's original motion to transfer and the oral argument on the *Daubert* and summary judgment motions. These changed circumstances warrant a reconsideration of the transfer motion. *See Cordis Corp. v. Siemens–Pacesetter, Inc.*, 682 F.Supp. 1200, 1201 (S.D.Fla.1987) ("In determining whether to transfer venue, a district court is not required to confine its venue consideration as to the facts as they existed at the time of the complaint.") (citations omitted). In any event, a court may *sua sponte* initiate the transfer question under 28 U.S.C. § 1404. *See Hamilton v. Accu–Tek*, 47 F.Supp.2d 330, 339 (E.D.N.Y.1999) ("A court may initiate transfer on its own motion.") (citations omitted).

When the court denied Meterlogic's transfer motion, it assumed that the facts that had been and would be developed in discovery were consistent with the facts that were originally pled in this case. During oral argument on the defendants' substantive motions, however, it became clear that each party and the court were in significant disagreement as to the factual basis and legal theories being advanced in

this case. When Meterlogic filed its second amended complaint, it became clear to the court how far from each other the parties and the court actually were. In effect, this case has begun anew in this forum. Because Meterlogic has filed a renewed motion, and the defendants have had an opportunity to respond to Meterlogic's arguments, it is appropriate to reconsider the transfer issue at this time.

### Analysis

■ The primary relief requested by Meterlogic in its renewed motion is a transfer to the United States District Court for the Western District of Missouri pursuant to 28 U.S.C. § 1404(a).[5] This provision is the statutory codification of the common law doctrine of *forum non conveniens*. Section 1404(a) states, "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The standard for transfer under 28 U.S.C. § 1404(a) leaves much to the broad discretion of the trial court, and once a trial judge decides that transfer of venue is justified for the convenience of parties and witnesses and in the interest of justice, the ruling can be overturned only for clear abuse of discretion, and the presumption in favor of the district court judge is heavy. *See Brown v. Connecticut Gen. Life Ins. Co.*, 934 F.2d 1193, 1197 (11th Cir.1991) (holding that trial court did not abuse discretion in transferring case that would impose financial hardship on a party no matter where it was heard).

■ Congress authorized courts to transfer the venue of a case in order to avoid unnecessary inconvenience to the litigants, witnesses, and the public and to conserve time, energy, and money. *See*

*Van Dusen v. Barrack*, 376 U.S. 612, 616, 84 S.Ct. 805, 809, 11 L.Ed.2d 945 (1964). The movant has the burden of persuading the trial court that the transfer is appropriate and should be granted. *See In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989). Whether a transfer is appropriate depends on two inquiries: (1) whether the action "might have been brought" in the proposed transferee court and (2) whether various factors are satisfied so as to determine if a transfer to a more convenient forum is justified. *See Del Monte v. Dole*, 136 F.Supp.2d 1271, 1281 (S.D.Fla.2001) (denying motion to transfer where above test not met); *Miot v. Kechijian*, 830 F.Supp. 1460, 1465–66 (S.D.Fla.1993) (same). Applying this test to this case, the court finds that transfer to the Western District of Missouri is warranted.

### I. Whether the Action Might Have Been Brought in Transferee Court

■ The first threshold consideration when deciding the merits of a motion to transfer is whether the case may have been brought in the desired district of transfer, which, in this case, is the Western District of Missouri. *See Miot*, 830 F.Supp. at 1465; *Garay v. BRK Electronics*, 755 F.Supp. 1010 (M.D.Fla.1991). This question, in turn, depends on whether CS and TS are subject to jurisdiction in Missouri, whether venue is appropriate in the Western District, and whether CS and TS are amenable to service of process in Missouri. *See Jewelmasters, Inc. v. May Dept. Stores Co.*, 840 F.Supp. 893, 894 (S.D.Fla.1993) (finding that action could have been brought in Central District of California where venue, process, and personal jurisdiction existed in that district).

---

5. Meterlogic also requests a transfer pursuant to 28 U.S.C. §§ 1406 and 1631, but, as transfer is warranted under § 1404, it is not necessary to discuss the applicability of those provisions.

In the present case, the subject matter jurisdiction of the Southern District of Florida over the second amended complaint and the counterclaim is based on diversity of citizenship pursuant to 28 U.S.C. § 1332. The same would be true if this case were brought in the Western District of Missouri. Because CS and TS have their principal place of business in Kansas City, Missouri, there is no question that personal jurisdiction, venue, and service of process would have been proper there. Accordingly, this action could have been brought in the Western District of Missouri.

## II. Application of Factors

■ After determining that the action could have been brought in the alternative forum, the next consideration is whether the transfer would be for the convenience of the parties and witnesses and in the interest of justice. This, in turn, depends on Meterlogic's ability to satisfy certain factors. These factors include the convenience of the parties, the convenience of the witnesses, the relative ease of access to sources of proof, the availability of service of process to compel the presence of unwilling witnesses, the cost of obtaining the presence of witnesses, the public interest, and all other practical problems that make trial of the case easy, expeditious, and inexpensive. *See Mason v. Smithkline Beecham Clinical Labs.*, 146 F.Supp.2d 1355, 1359 (S.D.Fla.2001) (listing factors); *Jewelmasters*, 840 F.Supp. at 895 (same); *Miot*, 830 F.Supp. at 1460 (same). Additional factors that have been discussed by other courts are analyzed below.

### A. Convenience of the Parties

■ In the typical motion to transfer, the plaintiff will be inconvenienced because it is usually the defendant who is attempting to remove the case to the defendant's home forum. In this case, however, it is the plaintiff who is seeking to transfer the case. As such, it can be assumed that Meterlogic's convenience is not contested. Moreover, the fact that the plaintiff is requesting the transfer can be considered as one factor in favor of allowing a change of venue. *See Moore v. McKibbon Bros., Inc.*, 41 F.Supp.2d 1350, 1356 (N.D.Ga. 1998) (granting transfer motion where, among other factors, plaintiff was moving party).

■ Although they vehemently contest Meterlogic's transfer motion, the defendants have failed to explain why Missouri is an inconvenient forum to try this case. In contrast, the plaintiff has met its burden of demonstrating that Missouri is more convenient for all the parties. CS is a Missouri limited liability company with its principal place of business in Kansas City, Missouri. TS is a Delaware limited liability company with its principal place of business in Kansas City, Missouri. Because both defendants are Missouri companies with no apparent connection to Florida other than this litigation, it is clear that Missouri is the more convenient forum for this case to proceed.

### B. Convenience of Witnesses, Sources of Proof, and Compulsory Process

■ The transactions giving rise to this case occurred in Florida and Missouri. Although it is not clear where most of the documents are located, there is no question that most of the witnesses reside in Missouri. More importantly, it is the non-moving parties' witnesses who reside in the transferee forum. Thus, the defendants cannot seriously argue that their witnesses would be inconvenienced by trial in Missouri. In its motion to transfer, Meterlogic names the following individuals as witnesses: David McCoy, Ronald Wasson, Jim Gilligan, Greg Clizer, Mark English, Joe Jacobs, Brenda Hagood, Doug Morgan, Carl Greenway, and Teresa Cook.

All of these are Missouri residents who are not subject to this jurisdiction's subpoena power. The significance of some of these witnesses is apparent from the face of the second amended complaint, which discusses McCoy's, Gilligan's, and Wasson's involvement in this case. While the defendants claim that they will make these individuals available to testify live at trial, the defendants do not have the authority to make this promise because some of these witnesses are not the defendants' employees. *Compare Mason v. Smithkline Beecham Clinical Labs.*, 146 F.Supp.2d 1355, 1361 (S.D.Fla.2001) (stating that transfer may be denied when witnesses in other district are party's employees). Rather, they are KLT, KLT, Inc., KCPL, or third party employees, and those entities are not parties to this case. As a result, the defendants cannot guarantee the witnesses' presence in Florida. Additionally, these individuals would be greatly inconvenienced if they were to come to Florida to testify. *See Mason* at 1361 ("The convenience of non-party witnesses is an important factor in determining whether a transfer should be granted.").

This is not simply a case where the plaintiff, as the party requesting transfer, wishes to shift the inconvenience to the defendants, the parties opposing transfer. Instead, it is the plaintiffs who theoretically would be inconvenienced by the transfer. Trying this case in Missouri would not prejudice the defendants or their witnesses in any way. In fact, from the record it appears that it would be more convenient for the defendants to try this case in Missouri, and they have not shown otherwise. This fact weighs heavily in favor of trying this case in Missouri.

### C. Duplicative Litigation

As stated by the United States Supreme Court, "The idea behind [28 U.S.C.] § 1404(a) is that where a 'civil action' to vindicate a wrong—however brought in a court—presents issues and requires witnesses that make one District Court more convenient than another, the trial judge can, after findings, transfer the whole action to the more convenient court." *Continental Grain Co. v. Barge FBL–585*, 364 U.S. 19, 26, 80 S.Ct. 1470, 1475, 4 L.Ed.2d 1540 (1960). According to the Supreme Court, § 1404(a) was designed to prevent "unnecessary inconvenience and expense to parties, witnesses, and the public." *Id.* 364 U.S. at 21, 80 S.Ct. at 1472. The situation examined by the Supreme Court in *Continental Grain Co.* is analogous to the one at bar. In that case, a barge owner sued a cargo owner in a Tennessee state court, alleging that the cargo owner had been negligent in the loading of the barge and caused the barge to sink. *Id.* 364 U.S. at 20, 80 S.Ct. at 1472. That case was then removed to the Tennessee district court. Shortly after, the cargo owner sued the barge and its owner in a Louisiana district court, alleging that the vessel had sunk because of its defects and unseaworthiness. *See id.* The barge owner filed a motion to transfer the Louisiana case to the Tennessee district court. *See id.* The Supreme Court held it was inappropriate to grant the motion because "[t]o permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent." *Id.* 364 U.S. at 26, 80 S.Ct. at 1474. It added that transfer was proper because the issues of fault, damages, and witnesses were identical in both jurisdictions. *Id.*

■ As in *Continental Grain Co.*, trying this case in two separate district courts would "lead to the wastefulness of time, energy, and money". Most of the witnesses are located in Missouri, and only the plaintiff's witnesses are located in this jurisdiction. Moreover, the issues before

this court and the Missouri court are essentially the same. The fact that this court has been asked to consider TS's and CS's liability, while the Missouri court has been asked to consider the corporate parents' liability, is of no consequence. The Missouri court cannot look at the facts surrounding the corporate parents' alleged liability in isolation; it also will need to consider CS's and TS's underlying fault in order to pierce the corporate veil. Additionally, if CS and TS are found liable in this jurisdiction, the Missouri court eventually will have the issue of their liability directly before it. Transfer is appropriate because both courts must consider the same underlying issues. Consolidation of these proceedings in one forum would avoid duplicative litigation.

Two separate cases currently exist because Meterlogic filed a second lawsuit when it learned that this court did not have jurisdiction over the corporate parents. Courts have recognized that transfer of a case is appropriate under these circumstances. For example, in *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962), the Supreme Court found that transfer was appropriate under 28 U.S.C. § 1406 because the district court lacked personal jurisdiction over two of the defendants.[6] *Id.* 369 U.S. at 464, 82 S.Ct. at 914. Rather than dismissing the case against these defendants, the district court transferred the entire case to a transferee court that would have jurisdiction over all the parties. The Court noted, "[T]his case is itself a typical example of the problem sought to be avoided, for dismissal here would have resulted in plaintiff's losing a substantial part of its cause of action ... because it made a mistake in thinking that

the respondent corporations could be 'found' or that they 'transact business' in the [transferor court]." *Id.*, 369 U.S. at 466, 82 S.Ct. at 915. The Court concluded that the transfer statute was enacted "to provide as effective a remedy as possible to avoid precisely this sort of injustice." *Id.*

Other courts have transferred cases under identical circumstances pursuant to 28 U.S.C. § 1404(a).[7] In *Fein v. Public Service Coordinated Transport*, 165 F.Supp. 370 (E.D.Pa.1958), the court granted a plaintiff's motion to transfer pursuant to 28 U.S.C. § 1404(a) so that the plaintiff could join as a third party defendant a person over which the transferor court did not have jurisdiction. *Id.* at 371. The court stated, "There is no reason why two lawsuits should be needed to dispose of this ... case. The transfer will eliminate a perfectly useless additional trial, and there is nothing whatever by way of convenience of the parties to outweigh that consideration." *Id.* The court also granted a transfer in *Milligan Electric Co. v. Hudson Construction Co.*, 886 F.Supp. 845 (N.D.Fla.1995), where it lacked personal jurisdiction over one of the defendants. It noted that it would be an "awkward situation" for it to retain jurisdiction over one defendant, while allowing litigation to proceed against the other defendants in a different forum. *Id.* at 850. *See also Aguacate Consol. Mines, Inc. v. Deeprock, Inc.*, 566 F.2d 523, 524 (5th Cir.1978) (transferring case under 28 U.S.C. § 1404(a) and noting that plaintiff should not be penalized for making erroneous guess under Florida's long-arm statute).

As stated by the Supreme Court in *Goldlawr*, dismissal of the corporate par-

---

6. The transfer statute at issue in *Goldlawr* was 28 U.S.C. § 1406, not 1404, but the Court's analysis applies to this case because both statutes involve the same requirements.

7. It is significant that, while case law exists to support transfer in this case, the court has been unable to find any cases denying transfer under similar circumstances, and the defendants have not cited to any such cases.

ents in this case has resulted in Meterlogic losing a substantial part of its cause of action—the ability to collect from solvent defendants—because Meterlogic mistakenly believed that personal jurisdiction would exist over all the defendants in Florida. While Meterlogic could have avoided considerable litigation if it had moved to transfer its case when it learned personal jurisdiction did not exist in this forum, reconsideration of the transfer issue is appropriate at this time because CS and TS have agreed to the filing of a second amended complaint, which alleges a significantly different case.[8] Granting Meterlogic's renewed motion pursuant to § 1404(a) is in accord with the Supreme Court's recognition in *Goldlawr* that the "interest of justice" is furthered by the transfer of a case in which the transferor court lacks jurisdiction over all defendants. To allow this case and the Missouri litigation to proceed simultaneously would contravene the policy of statutory transfer, which is to avoid duplicative litigation, inconvenience, and unnecessary expenses. Simply stated, why allow two courts to decide similar issues when one court can decide these issues more efficiently?

## D. Administrative Difficulties

 The defendants' primary argument in opposition to Meterlogic's motion is that transferring this case to the Western District of Missouri would result in a delay in trying this case. As discussed above, this case is not significantly more advanced in this jurisdiction than in Missouri because the filing of a second amended complaint in this forum has served to postpone the trial date to a much later time. The parties now need to conduct additional discovery, the defendants must respond to the complaint, and the defendants have indicated that they will file new summary judgment and *Daubert* motions. The situation would be different if this case were ready for trial or if dispositive motions had been filed and were ripe for a ruling by the court. However, because a second amended recently has been filed that dramatically changes Meterlogic's theory of the case and the course of discovery, it is unlikely that any delay would result by transferring this case to Missouri.[9]

Moreover, this is one of the busiest district courts in the nation, so it would be impossible for the court to address any dispositive motions that may be filed by the defendants, much less try this case, in the near future. In contrast, the Western District of Missouri has fifty percent less civil cases per judgeship than this district.[10] It is more than likely that the

8. In their opposition to Meterlogic's renewed motion, the defendants contend that the plaintiff could have avoided the current status of the case by dismissing this case and refiling in Missouri immediately after this court dismissed the corporate parents for lack of personal jurisdiction. While it is true that this would have avoided the situation that currently exists, the court will not sacrifice its time, resources, and overall considerations of judicial economy to "punish" Meterlogic for its misguided strategic decisions. The court must do what ultimately will further the "interest of justice", and in this case, this interest is advanced by transfer pursuant to 28 U.S.C. § 1404.

9. The defendants' argument that transfer would delay this case is further undermined by the Missouri court's discovery order, which allows discovery obtained in this action to be used in the Missouri litigation.

10. According to the 2000 Federal Court Management Statistics, which are published by the Administrative Offices of the United States Courts, the Western District of Missouri had an average of 286 civil cases pending per judgeship in 2000, while the Southern District of Florida had 527 civil cases pending per judgeship.

Missouri court will be able to address the merits of this case before this court. These calendar conditions are a factor that the court may consider in relation to Meterlogic's motion to transfer. *See Wyndham Assoc. v. Bintliff*, 398 F.2d 614, 619 (2d Cir.1968) (finding that docket conditions in New York were a factor warranting transfer to Texas); *see also Andrade v. Chojnacki*, 934 F.Supp. 817, 833–34 (S.D.Tex.1996) (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055 (1947)). They relate to the overall concern of making trial easy, expeditious, and less expensive. It is clear that this factor supports transfer in this case, as calendar conditions in the Western District of Missouri will permit a trial at least as soon, if not sooner, than could be had in the Southern District of Florida.

#### E. Attorneys

■ Of the factors considered on a transfer motion, the location of counsel is entitled to the least consideration. It is worth noting, however, that at least two district courts have found that this factor is relevant when the counsel for both parties are not practitioners in the transferor forum. *See Dupre v. Spanier Marine Corp.*, 810 F.Supp. 823, 826 (S.D.Tex.1993); *Inductotherm Corp. v. Pillar Corp.*, 417 F.Supp. 991, 994 (E.D.Pa.1976). This is the situation here, where counsel for the plaintiffs and one of the defendants' attorneys are from Kansas City, Missouri, and have been granted admission to practice in this court *pro hac vice*. While this factor shall not be given any significant weight, it does undermine the defendants' overall argument that litigating this case in Missouri would be an unfair burden. Even absent this consideration, transfer of this case to the district court in Missouri is appropri-

ate because there are sufficient additional factors weighing in favor of Meterlogic's position.

#### F. Insolvency of Defendants

Section 1404(a) authorizes transfer "for the convenience of parties and witnesses" and "in the interest of justice". While the defendants are correct that no reported decision has ever found that the collectability of a judgment is a factor to be considered in a motion to transfer, the language of § 1404(a), which provides generally for transfer to further the "interest of justice", is broad enough to encompass this case.[11] It is undisputed that, if Meterlogic prevails on the second amended complaint it has filed in this forum, it will collect nothing from CS and TS. Meterlogic will have wasted its resources by litigating in this forum, only to have to file a separate suit to collect the judgment in Missouri from the corporate parents. Additionally, this court will have wasted its time and resources in conducting this litigation, which involves insolvent defendants. Transferring this action to Missouri, a jurisdiction where the plaintiffs potentially can be afforded full relief, would further the interest of justice. In any event, whether or not the court may consider the insolvency of the defendants in this jurisdiction as a factor warranting transfer, there are sufficient other reasons to justify transfer of this case to the Western District of Missouri.

### III. Conclusion

In one way or another, the facts at issue in this case eventually will be before the Missouri district court, either by means of supplemental judgment enforcement proceedings against the corporate parents (if

---

**11.** It also is true that no court has held that a defendant's insolvency *is not* a factor to be considered in transfer analysis.

Meterlogic were to prevail in this jurisdiction) or by means of direct litigation against the corporate parents (this litigation is currently proceeding there). The real issue is whether this case should go to Missouri now for a complete disposition of all the potential defendants or whether it should go there later for a piecemeal disposition. As stated throughout this order, it is in the interest of justice to transfer this case at the present time to the Western District of Missouri for a complete disposition of all facts and legal issues by one court. Transfer is warranted because of the related litigation involving CS's and TS's corporate parents and because of the similarities between the complaints at issue in both cases. The resolution of both cases involves the same evidence. Additionally, transfer will result in more efficient pretrial discovery and the avoidance of duplicative litigation and inconsistent results. Transfer also will facilitate recovery if Meterlogic prevails on the allegations of its complaints. In short, litigating in Missouri will save time and money for all the parties and the courts.

As recognized in the previous order denying Meterlogic's original motion to transfer, Meterlogic's situation is self-imposed because it chose to file suit in this jurisdiction, where none of the defendants reside. It is also true, however, that the defendants' situation is self-imposed. CS and TS have provided no justification for keeping the case in this forum. Despite their conclusory statements to the contrary, it is more inconvenient for CS and TS to try this case in Florida than in Missouri, where they are incorporated and their witnesses reside. Moreover, it is not as if the defendants chose to appear in this forum. They only appeared here because they were haled into this court when Meterlogic brought suit in Florida. Similarly, they only filed their counterclaim in this court because they were sued here. The filing of this counterclaim does not weigh against transfer because the defendants have not shown that they would be prejudiced by the transfer of the counterclaim to Missouri. Moreover, it does not appear from the record that anything has been done on this counterclaim by any of the parties.

This case actually would not be delayed if it were tried in Missouri because discovery already has commenced in that jurisdiction. Moreover, Meterlogic's filing of a second amended complaint requires an amended pleading and counterclaim by the defendants. Most importantly, discovery will need to be reopened and new summary judgment and *Daubert* motions will need to be filed because Meterlogic has changed its entire theory of the case. New parties and factual circumstances have been introduced by the second amended complaint. It would be impossible for the parties and the court to abide by the most recent scheduling order. In effect, the defendants would not be prejudiced by a transfer of this case to the Western District of Missouri. Accordingly, it is hereby:

**ORDERED AND ADJUDGED THAT:**

1. Meterlogic's renewed motion to transfer (DE # 224) is GRANTED.

2. The Clerk of the Court shall transfer this case in its entirety to the United States District Court for the Western District of Missouri.

3. All pending motions are DENIED AS MOOT.

4. The Clerk of the Court shall CLOSE this case.