## GAME CONTROLLER TECHNOLOGY LLC, Plaintiff,

v.

## SONY COMPUTER ENTERTAINMENT AMERICA LLC and Sony Corporation of America, Defendants.

### Case No. 13–22795–CIV.

United States District Court,
S.D. Florida,
Miami Division.

Jan. 10, 2014.

---

John J. Edmonds, Johnathan K. Yazdani, Shea N. Palavan, Stephen F. Schlather, Collins, Edmonds, Pagorzelski, Schlather & Tower, PLLC, Houston, TX, Curtis David Carlson, Ronald Lewittes, Carlson & Lewittes PA, Miami, FL, for Plaintiff.

Edward Maurice Mullins, Regan Noelle Kruse, Rafael Javier Valdes, Cristina M. Suarez, Astigarraga Davis Mullins & Grossman, Miami, FL, Eric A. Buresh, Erise IP, Overland Park, KS, Abran J. Kean, Erise, IP, Greenwood Village, CO, for Defendants.

## ORDER

CECILIA M. ALTONAGA, District Judge.

**THIS CAUSE** came before the Court on Defendants, Sony Computer Entertain-

ment America LLC ("SCEA") and Sony Corporation of America's ("SCA['s]") (collectively, "Sony['s]") Motion to Transfer Venue to the Northern District of California ... ("Motion") [ECF No. 31], filed October 24, 2013. The Motion requests this action be transferred pursuant to 28 U.S.C. section 1404(a) from this Court to the United States District Court for the Northern District of California. On November 18, 2013, Plaintiff, Game Controller Technology LLC ("GCT"), filed its Memorandum in Opposition ... ("Opposition") [ECF No. 44], and on November 22, 2013 Sony filed a Reply Memorandum ... ("Reply") [ECF No. 54]. The Court has carefully reviewed the parties' written submissions and applicable law.

## I. BACKGROUND

On August 5, 2013, GCT filed its Complaint [ECF No. 1] for patent infringement against Sony. GCT is a Florida limited liability company with its principal place of business in Fort Lauderdale, Florida. (*See id.* ¶ 1). Wi–Lan, Inc. ("Wi–Lan") is a Canadian corporation with its principal place of business in Canada. (*See* Mot. 4). GCT is a wholly-owned and operated subsidiary of Wi–Lan. (*See id.* 4).

Plaintiff alleges SCEA, a Delaware limited liability company with its principal place of business in California, and SCA, a New York corporation with its principal place of business in New York (*see* Compl. ¶¶ 2–3), committed acts of patent infringement in this District (*see id.* ¶ 13). Specifically, Sony "infring[ed], literally and/or under the doctrine of equivalents, [U.S. Patent No. 8,094,885, entitled 'System and Method for Tracking an Electronic Device'] in this judicial district and elsewhere by making, using, offering for sale, importing, and/or selling, without authority from

GCT the PlayStation 3, PlayStation 4 and PlayStation Move." (Compl. ¶ 13).

The patent-in-suit relates to

SCEA's Move Controller, which is a motion-sensing game controller that allows the player to interact with the [PlayStation 3] or [PlayStation 4] video game console through motion or positioning of the Move Controller. In other words, the Move Controller, either alone or in conjunction with the [PlayStation 3] or [PlayStation 4], is the Accused Product in this case.

(Mot. 3–4 (alterations added; citations omitted)). Plaintiff also alleges Sony's infringement is willful and reckless. (*See* Compl. ¶ 17). As stated, Sony seeks transfer of the present case to the Northern District of California. (*See generally* Mot.).

## II. LEGAL STANDARD

 Federal law provides "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The purpose of section 1404(a) is to "avoid unnecessary inconvenience to the litigants, witnesses, and the public, and to conserve time, energy, and money." *Cellularvision Tech. & Telecomms., L.P. v. Alltel Corp.,* 508 F.Supp.2d 1186, 1189 (S.D.Fla.2007) (citation omitted). Courts have broad discretion "to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988) (quoting *Van Dusen v. Barrack,* 376 U.S. 612, 622, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964)); *accord Meterlogic, Inc. v. Copier Solutions, Inc.,* 185 F.Supp.2d 1292, 1299 (S.D.Fla.2002).

 Once a court finds an action could have been brought in the transferee forum, the court "must weigh various factors ... to determine if a transfer ... is justified." *Windmere Corp. v. Remington Prods., Inc.*, 617 F.Supp. 8, 10 (S.D.Fla.1985) (citation omitted). Courts should consider at least the following private and public interest factors to determine whether transfer is appropriate:

> (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n. 1 (11th Cir.2005) (citation omitted); *see also Meterlogic*, 185 F.Supp.2d at 1300.

 It is the movant's burden to establish transfer is warranted. *See Cent. Money Mortg. Co. [IMC], Inc. v. Holman*, 122 F.Supp.2d 1345, 1346 (M.D.Fla.2000). This burden is high: a plaintiff's choice of forum "should not be disturbed unless it is clearly outweighed by other considerations." *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir.1996) (citation and internal quotation marks omitted); *accord Mason v. Smithkline Beecham Clinical Labs.*, 146 F.Supp.2d 1355, 1359 (S.D.Fla.2001) ("Transfer can only be granted where the balance of convenience of the parties *strongly favors* the defendant." (emphasis in original; citations omitted)). However, "where the operative facts underlying the cause of action did not occur within the forum chosen by the Plaintiff, the choice of forum is entitled to less consideration." *Windmere Corp.*, 617 F.Supp. at 10 (citations omitted).

## III. ANALYSIS

Sony asserts this action could have been brought in the Northern District of California and the balance of convenience highly favors transfer to the Northern District of California. (*See generally* Mot.). According to Sony the design, development, importation, distribution, and marketing of the accused products (the PlayStation 3, PlayStation 4, and PlayStation Move) occurred in the Northern District of California; all non-attorney witnesses are in the Northern District of California or Israel; no design, development, research, or testing of the accused products takes place in this District; and Plaintiff itself has a tenuous connection to Florida inasmuch as Wi–Lan is a Canadian company and GCT was created solely as a vehicle for Wi–Lan to file suit in this District. (*See* Mot. 2–3, 13–14). In its Opposition, Plaintiff insists all Sony has shown is that suit in the Northern District of California is more convenient for its own employees, and a party's own convenience is insufficient to warrant transfer; the non-party witnesses only duplicate the testimony of the party employees and are included solely to encourage transfer; and the time it takes for a case to get to trial in the Northern District of California is on average six months longer than it is in this District. (*See* Opp'n 2–3, 17). The Court balances Sony's and Plaintiff's assertions to determine whether transfer is appropriate.

### A. The Action Might Have Been Brought in the Northern District of California

 An action might have been brought in a transferee district if that district has subject matter jurisdiction over the action, venue is proper, and the

parties are amenable to service of process in the transferee forum. *See Meterlogic,* 185 F.Supp.2d at 1299. GCT and Sony agree the case could have originally been brought in the Northern District of California. (*See* Mot. 12; Opp'n 9). As a patent-infringement action, the Northern District of California has subject matter jurisdiction under 28 U.S.C. sections 1331 and 1338. Venue is proper because SCEA's principal place of business is in the Northern District of California and SCA has consented to venue in the Northern District of California. (*See* Mot. 12; Opp'n 9). Finally, SCEA and SCA are amenable to process issuing out of the Northern District of California. (*See id.*). This preliminary inquiry being satisfied, the Court turns to an examination of the remaining factors.

## B. Transfer Would Serve the Convenience of the Parties and the Interests of Justice

### 1. The Convenience of the Witnesses

■ The convenience of the party and non-party witnesses is an important factor in the analysis whether to grant a motion to transfer.[1] *See Gonzalez v. Pirelli Tire, LLC,* No. 07–80453–Civ, 2008 WL 516847, at *2 (S.D.Fla. Feb. 22, 2008). Sony asserts the Northern District of California is a more convenient forum than this District because the SCEA employees responsible for the design, development, and testing of the accused products are in the Northern District of California, including many witnesses with information relevant to GCT's infringement claims. (*See* Mot. 12). Spe-

cifically, Richard Marks, one of "SCEA's critical trial witnesses," and the employee who led the research, design, development, and operation of the accused product, resides in the Northern District of California. (*Id.; see also id.* Ex. E [ECF No. 31–6] ). SCEA's marketing, sales, and financial operations are also located in the Northern District of California. (*See id.*). Witnesses from these departments, particularly John Koller, identified as another of "SCEA's critical trial witnesses," will provide testimony on the distribution and marketing efforts, and "the significance of the accused functionality to selling the accused products." (*Id.*). GCT identifies no Florida employees whose testimony will be required in discovery or at trial. (*See* Opp'n 9–10).

■ Admittedly, vague references to potential witnesses without specific reference to the accused products or an explanation of the relevant testimony to be provided are not sufficient to support transfer. *See Wi–Lan USA, Inc. v. Alcatel–Lucent USA Inc.,* No. 12–23568–Civ, 2013 WL 358385, at *4 n. 2 (S.D.Fla. Jan. 29, 2013). But here Sony specifically identifies five potential third-party witnesses and provides information regarding their involvement with the accused products and a description of the relevant testimony each will provide. (*See* Mot. 8–9, *id.* Ex. G [ECF No. 31–8] ). In its initial disclosures, GCT did not identify any third-party witnesses located in this District. (*See id.* 13). GCT instead identified the inventor of the patent-in-suit, who lives in Israel, and the attorney responsible for the initial prose-

1. GCT asserts "[c]ourts in this circuit have repeatedly held that the location of party witnesses is 'practically irrelevant' when analyzing a motion under Section 1404." (Opp'n 10 (citing *Kenneth F. Hackett & Assocs., Inc. v. GE Capital Info. Tech. Solutions, Inc.,* No. 10–20715–Civ, 2010 WL 3056600, at *4 (S.D.Fla. Aug. 4, 2010))). However, this is an overly broad interpretation of the holding of *Kenneth F. Hackett,* which narrowly applies "[w]here a transfer merely shifts the inconvenience from one party to another." *Kenneth F. Hackett,* 2010 WL 3056600, at *4 (alteration in original; citations and internal quotation marks omitted).

cution of the patent-in-suit, who lives in the District of Columbia, as the key non-party witnesses. (*See id.*). Subsequently, GCT updated its disclosures to include a Fort Lauderdale attorney who will testify regarding the ownership of the asserted patent, an issue currently not in dispute and unlikely to be a focus requiring live testimony. (*See id.*). Of the identified third-party witnesses, five live in the Northern District of California, and only one lives in this District.

In sum, several potential witnesses will be aided by a transfer of this action to the Northern District of California, compared to only one witness, the necessity of whose testimony is disputed, who will be inconvenienced by a transfer. On balance, this factor favors transfer.

### 2. The Location of Relevant Documents and the Ease of Access to Proof

"In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer." *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed.Cir. 2009) (citation and internal quotations marks omitted). Here all of the relevant documentary evidence is located in SCEA's headquarters in the Northern District of California, with none present in this District. (*See* Mot. 14). However, as Sony recognizes, in this age of electronic discovery, the burden to produce documents in Florida instead of in the Northern District of California has been reduced by technological advancements. (*See id.* (citation omitted)). The Court has previously found, and repeats here, that "[p]roducing documents and other files for litigation ... is not usually a burdensome ordeal due to technological advancements, such as electronic document-imaging and retrieval." *Kenneth F. Hackett*, 2010 WL 3056600, at *5 (citation

omitted). Consequently, this factor does not support transfer.

### 3. The Convenience of the Parties

 It is undisputed that litigation in the Southern District of Florida will be substantially less convenient to Sony than litigation in the Northern District of California. (*See* Mot. 14; Opp'n 2). Sony's inconvenience must be weighed against any inconvenience caused to GCT if the action is transferred. *See Burger King Corp. v. Thomas*, 755 F.Supp. 1026, 1030 (S.D.Fla.1991). Since GCT chose to file suit in the Southern District of Florida, it is difficult to argue this forum is inconvenient to the Plaintiff. However, it must be noted that GCT has no identifiable employees in this District, and no office bears its name here. (*See* Mot. 16; Opp'n 4). Additionally, regardless of whether the litigation proceeds in this District or in the Northern District of California, GCT acknowledges its employees, the majority of whom are located in Canada, will be required to travel a significant distance. (*See* Opp'n 13). When one set of witnesses "will be required to travel a significant distance no matter where they testify .... [and] there are a substantial number of witnesses residing within the transferee venue who would be unnecessarily inconvenienced by having to travel away from home" this factor should favor transfer. *In re Genentech, Inc.*, 566 F.3d at 1344 (citations omitted). As all relevant SCEA employees are located in the Northern District of California and any relevant GCT employees will be required to travel a significant distance regardless of where the case is tried this factor favors transfer.

### 4. The Locus of Operative Facts

 Sony argues the locus of operative facts is in the Northern District of California where the research, design, and development of the accused products occurred.

(*See* Mot. 15). "[W]here the operative facts underlying the cause of action did not occur within the forum chosen by the Plaintiff, the choice of forum is entitled to less consideration. Several district courts have held that the 'center of gravity' for a patent infringement case is where the accused product was designed and developed." *Motorola Mobility, Inc. v. Microsoft Corp.*, 804 F.Supp.2d 1271, 1276 (S.D.Fla.2011) (footnote call number, citations, and internal quotation marks omitted). "[T]he sale of an accused product offered nationwide does not give rise to a substantial interest in any single venue." *In re Acer America Corp.*, 626 F.3d 1252, 1256 (Fed.Cir.2010) (citation omitted). GCT argues Sony's *sale* of the accused products in this District is sufficient to establish a locus of operative facts in the Southern District of Florida. (*See* Opp'n 14–15). The Court rejects this argument and finds the locus of operative facts is in the Northern District of California. Thus this factor favors transfer to the Northern District of California.

### 5. The Availability of Process to Compel Unwilling Witnesses

Sony names several potential third-party witnesses who reside in the Northern District of California and would be subject to the subpoena power of the transferee court. (*See* Mot. 15–16). Further, Sony points "to a specific [third-party] witness who . . . indicated via affidavit . . . his unwillingness to cooperate," but resides in the Northern District of California and could thus be compelled to testify by the transferee court. (Opp'n 15). GCT acknowledges it is unclear which potential third-party witnesses may be important to trial, but argues that Sony "did nothing more than provide . . . cumulative witness[es]" while failing to show how they will provide any relevant information. (*Id.* 15–16). Not true. Sony provides detailed descriptions regarding the potential testimony of the named third-party witnesses. (*See* Mot. 7–8, Mot. Ex. G [ECF No. 31–8] ). In addition "third party, neutral prior art witnesses can be important . . . even if they have the exact same knowledge as party witnesses for the practical reason that third-party witnesses are not subject to attack on bias grounds based on their employment with a named defendant." (Reply 6).

■ Meanwhile, the Court only has subpoena power over one of the disclosed third-party witnesses, an in-house senior legal counsel for GCT's parent company Wi–Lan. (*See* Mot. 13, 16). "[C]ourts generally transfer cases when important witnesses can not be compelled to testify in the forum, but could be subpoenaed in the transferee court." *Wi–LAN USA, Inc. v. Apple Inc.*, No. 12–cv–24318–KMM, 2013 WL 1343535, at *4 (S.D.Fla. Apr. 2, 2013) (alteration in original; internal quotation marks and citation omitted). The Northern District of California is the preferable venue for the exercise of subpoena power over the specifically identified third party witnesses. Therefore, this factor favors transfer.

### 6. The Relative Means of the Parties

While GCT acknowledges "[t]he parties' relative means are irrelevant because it will be costly and inefficient for both parties to litigate this case in the Southern District of Florida," it argues as "a fledgling company . . . it would suffer a greater burden than either SCEA or SCA if this case was transferred." (Opp'n 16 (citation omitted)). GCT does not claim it would be unable to bear the costs of litigation in the event of a transfer and fails to address why it would be cheaper for it to litigate the case in this District. (*Id.*). Therefore, this factor is neutral.

### 7. The Forum's Familiarity with the Governing Law

The parties agree this factor is neutral. (*See* Mot. 17; Opp'n 16).

### 8. Weight Accorded a Plaintiff's Choice of Forum

▉▉ "[A] plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations." *Robinson,* 74 F.3d at 260 (citation and internal quotation marks omitted). However, "where the operative facts underlying the cause of action did not occur within the forum chosen by the plaintiff, the choice of forum is entitled to 'less consideration.'" *Trace–Wilco, Inc. v. Symantec Corp.,* No. 08–80877–Civ, 2009 WL 455432, at *2 (S.D.Fla. Feb. 23, 2009) (citations omitted). Furthermore, where a patentee attempts to influence venue by establishing "recent" and "ephemeral" connections to a district, the choice of forum is also entitled to less consideration. *In re Microsoft Corp.,* 630 F.3d 1361, 1365 (Fed. Cir.2011) (citation omitted).

GCT incorporated in Florida in January 2013 and does not have any office space or employees separate and distinct from its parent company, Wi–Lan. (*See* Opp'n 4). As GCT admits, it chose this District partly because the federal district courts here participate in the federal patent pilot program and offer an expedited docket as compared to other districts, thereby reducing GCT's business expenses. (*See id.*). As the Court has stated before in regard to another of Wi–Lan's subsidiaries, GCT "appears to have been created solely for the purpose of filing cases in the Southern District of Florida." *Wi–Lan USA, Inc.,* 2013 WL 358385, at *5 (citation and internal quotation marks omitted). Consequently, GCT's Florida existence provides less than persuasive reason to deny transfer to the Northern District of California, where a majority of the alleged infringing activity takes place. *See, e.g., Compression Tech. Solutions LLC v. EMC Corp.,* No. 4:11cv1579 TCM, 2012 WL 1188576, at *8 (E.D.Mo. Apr. 6, 2012) (granting motion to transfer and citing cases where plaintiff's recent incorporation in forum without any other meaningful activity negated deference generally given a plaintiff's choice); *Shared Memory Graphics LLC v. Apple Inc.,* No. 5:09CV5128 BSM, 2010 WL 5151612, at *3 (W.D.Ark. May 27, 2010) ("Although [plaintiff] is incorporated in Arkansas, it had no role in the development of the patents involved.... Further, the record does not indicate that [plaintiff] has any relevant employees or documents in the Western District of Arkansas." (alterations added; citation omitted)).

### 9. Trial Efficiency and the Interests of Justice

Sony provides statistics showing the average time for a case to reach its conclusion is less than two months more in the Northern District of California than in this District. (*See* Mot. 17). Plaintiff disputes the accuracy of Sony's numbers, albeit without providing a reference to source documentation, insisting this District is more than six months faster than the Northern District of California. (*See* Opp'n 17). Plaintiff also asserts, without providing source documentation, the docket of the Northern District of California is significantly more congested than the docket of this District. (*See id.*). Unable to verify the accuracy of Plaintiff's claims, this factor is either neutral or slightly favors retention of the suit.

## IV. CONCLUSION

▉▉ The Court now balances all of these factors. The Court agrees with Sony that the private interest factors pertaining to witness convenience, party convenience, locus of operative facts, and

availability of compulsory process favor transfer to the Northern District of California. Additionally, the Court finds compelling that Plaintiff's presence in this District is recent and ephemeral, deserving of less consideration than a domestic plaintiff would normally be entitled to. The Court also agrees some of the factors considered—such as the location of relevant documents, the parties' relative means, and the forum's familiarity with governing law are neutral, weighing neither in favor of nor against transfer, while the public interest factor of trial efficiency might point to retention of the case in this District. This places five of the factors in Sony's favor, three of the factors as neutral, and one potentially in GCT's favor. On this record, the Court concludes that Sony has carried its high burden of showing the balance of convenience strongly favors transfer. *See Cent. Money Mortg. Co.*, 122 F.Supp.2d at 1346; *Mason*, 146 F.Supp.2d at 1359.

Being fully advised, it is

**ORDERED AND ADJUDGED** that the Motion to Transfer Venue to the Northern District of California Under 28 U.S.C. § 1404(a) [**ECF No. 31**] is **GRANTED.** The Clerk is instructed to transfer this case to the United States District Court for the Northern District of California and mark this case as **CLOSED** in this District.