**TRAFALGAR CAPITAL SPECIALIZED INVESTMENT FUND (IN LIQUIDATION), Plaintiff.**

v.

**Scott W. HARTMAN, et al., Defendants.**

**Case No. 11–24084–CIV.**

United States District Court, S.D. Florida.

June 22, 2012.

Edward H. Davis, Jr., Ava Janine Borrasso, Rafael J. Valdes, Astigarraga Davis Mullins & Grossman, P.A., Miami, FL, for Plaintiff.

Justin Infurna, Aileen Rodriguez Mazanetz, Boyette, Cummins & Nailos, PLLC, Clermont, FL, for Defendants.

### ORDER

CECILIA M. ALTONAGA, District Judge.

**THIS CAUSE** came before the Court on Defendants' Motion to Transfer Action

from the United States District Court for the Southern District of Florida to the United States District Court for the District of Nevada, Las Vegas Division ("Motion") [ECF No. 32], filed May 4, 2012. The Court has carefully reviewed the parties' written submissions and applicable law.

## I. BACKGROUND

Plaintiff, Trafalgar Capital Specialized Investment Fund (In Liquidation) ("Plaintiff" or the "Fund"), is an investment company incorporated under the laws of the Grand Duchy of Luxembourg. (*See* Am. Compl. ¶ 1 [ECF No. 5] ). Defendants are Scott W. Hartman ("Hartman"), a Pennsylvania resident; David S. Montoya ("Montoya"), a Connecticut resident; and Seaview Mezzanine Fund Advisors, Inc. ("Seaview"), a Delaware corporation. (*See id.* ¶¶ 2–4). On November 10, 2011 Plaintiff filed a Complaint [ECF No. 1] against Defendants seeking to recover damages for breach of a guaranty agreement. On February 14, 2012, Plaintiff filed its Amended Complaint, which the Court summarizes below.

### A. The Deal

During 2008 and most of 2009, Hartman and Montoya were owners and officers of Lumax Gaming, Inc. ("Lumax"), a Nevada corporation. (*See* Am. Compl. ¶ 7). On February 28, 2008, Lumax entered into an asset purchase agreement with Silver Saddle, Inc. ("SSI"), a Nevada corporation, to purchase certain assets of SSI including a gaming establishment known as the Silver Saddle Saloon (the "Property"), located in Las Vegas, Nevada. (*See id.* ¶ 8). On April 30, 2008, Lumax and the Fund entered into, among other things, a securities purchase agreement (the "Securities Purchase Agreement") whereby the Fund agreed to purchase $6.5 million of senior secured redeemable debentures for an aggregate purchase price of $6.5 million. (*See id.* ¶ 9). The proceeds obtained from the Securities Purchase Agreement were then used to fund Lumax's purchase of the Property from SSI. (*See id.*).

Contemporaneously with the execution of the Securities Purchase Agreement, Lumax and the Fund also executed the following documents on April 30, 2008: a senior secured redeemable debenture (the "Debenture"); a deed of trust (the "Deed of Trust"); an assignment of leases and rents (the "Assignment of Leases and Rents"); and a security agreement (the "Security Agreement") (collectively, the "Loan Documents"). (*See id.* ¶ 10). The Deed of Trust, the Assignment of Leases and Rents, and the Security Agreement encumbered all of Lumax's assets, including the Property, in order to secure Lumax's obligations and the Fund's rights under the Securities Purchase Agreement and the Debenture. (*See id.* ¶ 11). To further guarantee the full and timely payment of Lumax's obligations under the Securities Purchase Agreement and the Senior Secured Debenture, Hartman, Montoya, and Seaview each executed a personal and corporate guaranty (the "Guaranty") that same day. (*See id.* ¶ 12). Pursuant to the Guaranty, Hartman, Montoya and Seaview jointly and severally agreed to become surety to the Fund. (*See id.* ¶ 13). The Guaranty specifically states that the liability of each Defendant is "absolute, unconditional, continuing, primary, direct and independent of the obligations of ... the other Guarantors." (Guaranty 1 [ECF No. 37–1] ).

The Guaranty also contains the following forum selection and consent to jurisdiction clause:

> *Forum Selection and Consent to Jurisdiction.* Any litigation based on or arising out of, under, or in connection

with, this Guaranty shall be brought and maintained exclusively in the federal courts of the State of Florida. Each Guarantor hereby expressly and irrevocably submits to the jurisdiction of the federal courts of the State of Florida for the purpose of any such litigation as set forth above and irrevocably agrees to be bound by any final judgment rendered thereby in connection with such litigation. Each Guarantor irrevocably consents to the service of process by registered mail, postage prepaid, or by personal service within or without the State of Florida. Each Guarantor hereby expressly and irrevocably waives, to the fullest extent permitted by law, any objection which Guarantor may have or hereafter may have to the laying of venue of any such litigation brought in any such court referred to above and any claim that any litigation has been brought in an inconvenient forum....

(*Id.* 4).

Thereafter, on June 30, 2009, the Fund and Lumax entered into a restructuring agreement (the "Restructuring Agreement"), which modified the payments due to the Fund under the Loan Documents. (*See id.* ¶ 14). Additionally, Lumax acknowledged that as of June 30, 2009, the amount outstanding under the Loan Documents was $6,530,052.36. (*See id.*).

## B. The Default

After Lumax acquired the Property, Hartman and Montoya were unable to obtain the requisite Nevada gaming license to operate the casino because the Nevada Gaming Commission determined, in part, that it had concerns regarding their behavior. (*See id.* ¶ 15). As a result of their inability to operate the casino establishment located on the Property, Hartman and Montoya conveyed and relinquished ownership and control of Lumax to another individual, Saeed Shakeri ("Shakeri"), on December 7, 2009. (*See id.*).

In November 2010, Lumax defaulted on its obligations under the Loan Documents. (*See id.* ¶ 16). On November 30, 2010, a notice of event of default and acceleration (the "Notice of Default") was sent to Lumax informing it that an Event of Default had occurred pursuant to section 3.01 of the Debenture and that full payment of all outstanding debt, in the sum of $10,751,593.29, was due as of November 30, 2010 with interest accruing at 12.25% per annum. (*See id.* ¶ 16). On December 2, 2010, Lumax received a Notice of Foreclosure accompanied by a Notice of Breach and Election to Sell Under the Deed of Trust (collectively, the "Notice of Foreclosure"). (*See id.* ¶ 17). The Notice of Foreclosure provided that Lumax had defaulted on payments required under the terms of the Debenture and that Lumax's debt to the Fund was due immediately. (*See id.* ¶ 17). Lumax was unable to cure the default. (*See id.* ¶ 18).

Thereafter, on April 20, 2011, Lumax, executed and delivered a deed in lieu of foreclosure (the "Deed"), effectively transferring ownership of the Property to Silver Saddle Acquisition Corporation ("SSAC"), which holds legal title to the Property on behalf of the Fund, the equitable and true owner of the Property. (*See id.*). The Deed was recorded in the Clark County Recorder's Office on May 17, 2011. (*See id.*). The Deed does not release Hartman, Montoya or Seaview—the Guarantors—from their obligations under the Guaranty. (*See id.*)

As of August 2011, the Property was valued at $800,000. (*See id.* ¶ 20). The Fund never assigned its rights under the Guaranty, and it has exclusive ownership and control of its rights under the Guaranty. (*See id.* ¶ 18). There remains a substantial deficiency owed to the Fund,

which continues to increase due to the accumulation of interest and attorneys' fees and costs. (*See id.* ¶ 20). Based on the foregoing allegations, Plaintiff seeks to hold Defendants jointly and severally liable for the deficiency pursuant to the Guaranty, and also seeks to recover litigation expenses for prosecuting the action.

## C. The Motion to Transfer and Defendants' Narrative of Events

On May 4, 2012, Defendants filed the present Motion seeking to transfer the action from the Southern District of Florida to the District of Nevada. The Motion is accompanied by a Memorandum of Law ("Memorandum") [ECF No. 32–1], in addition to a variety of exhibits and affidavits that offer a substantially different narrative of events, which the Court describes below.

Defendants state that in late 2009, Plaintiff, through its officer and representative, Robert Press ("Press"), represented to Hartman that if Hartman was willing transfer his ownership interest in Lumax to Shakeri, then Plaintiff would execute an amendment to the Debenture ("Debenture Amendment") that would allow Lumax to continue its monthly repayment obligations and would extend the Debenture's maturity date to February 1, 2012. (*See* Hartman Aff. ¶ 6 [ECF No. 32–9]; Defs.' Am. Compl. ¶ 12, Ex. C [ECF No. 33–3] ). In reliance upon Plaintiff's representations, Hartman transferred his ownership in Lumax to Shakeri through a Share Purchase Agreement on December 7, 2009. (*See* Hartman Aff. ¶ 6; Share Purchase Agreement [ECF No. 32–11] ). The Share Purchase Agreement is signed by Hartman and Shakeri, and expressly states that its terms "shall be subject" to Plaintiff's approval of "the amendment of the Senior Secured Redeemable Debenture" between Plaintiff and Lumax. (Share Purchase

Agreement 1–2). Upon execution of the Share Purchase Agreement, Hartman was divested of all control and possession of Lumax's books and records, which are now located in Clark County, Nevada. (*See* Hartman Aff. ¶ 7).

Thereafter, Shakeri tendered the payments to Plaintiff on a monthly basis from January 2010 through March 2011 in accordance with the terms of the Debenture Amendment. (*See* Defs.' Am. Compl. ¶ 18). However, Plaintiff never actually approved the Debenture Amendment. (*See id.*) And neither Shakeri nor Plaintiff ever informed Hartman that the Debenture Amendment was never approved, or, more generally, that there were any defaults or breaches of the Debenture. (*See* Hartman Aff. ¶ 8). Thus, it was to Defendants' surprise when, on November 30, 2010, they received the Notice of Breach from Plaintiff. (*See* Defs.' Am. Compl. ¶ 20). Upon receipt, Hartman urged Shakeri to take all steps necessary to confirm that Lumax was not in default of the Debenture and to protect Lumax's assets, including the Nevada Property. (*See id.*). Shakeri responded that Hartman had no legal rights or interests in Lumax. (*See id.* ¶ 21).

Based on the foregoing events, on March 16, 2011, Hartman and Montoya, among other convertible debt holders of Lumax, filed a complaint against Plaintiff, SSAC, Lumax, Shakeri, and Press alleging claims for breach of contract, fraud and conspiracy to commit fraud, accounting and constructive trust, breach of duty of loyalty and breach of duty of care, appointment of receiver over Lumax, conversion and unjust enrichment, and quiet title, in Clark County, Nevada (the "Nevada action"). (*See* Defs.' Compl. [ECF No. 33–8] ). Thereafter, on April 20, 2011, while the Nevada action was pending, Shakeri, acting on behalf of Lumax, executed a

Deed in Lieu of Foreclosure in favor of SSAC, as assignee of Plaintiff, transferring ownership of the Nevada Property to SSAC, thereby releasing Lumax "from all liability arising under the Deed of Trust and the Note ... [in] full satisfaction of the Note and all obligations secured by the Deed of Trust...." (Deed in Lieu of Foreclosure 2 [ECF No. 33–9]).

Then, on April 21, 2011, a hearing was held before the Nevada Gaming Commission in Clark County, Nevada, on the issue of Silver Saddle Saloon's application for a non-restricted gaming license. (*See* Nevada Gaming Commission Transcript [ECF No. 33–10]). Nevada attorney, John K. Maloney ("Maloney"), and Mississippi attorney, Gary Thrash ("Thrash"), appeared on behalf of Plaintiff and SSAC. (*See id.* 4). During the hearing, Mr. Maloney represented to the Nevada Gaming Commission that Shakeri's deeding title of the Nevada Property held by Lumax to SSAC released Montoya and Hartman as personal guarantors under the note. (*See id.* 43). Defendants subsequently filed an amended complaint in the Nevada action adding claims of waiver and promissory estoppel against Plaintiff for the representations made at the hearing. (*See* Defs.' Am. Compl. ¶ 53).

### D. Plaintiffs Response and Additional Facts

On May 29, 2012, Plaintiff filed a Response [ECF No. 37] to the Motion, including a variety of exhibits in support. In its Response, Plaintiff highlights the following additional facts. First, Plaintiff states Florida law governs the Debenture, Securities Purchase Agreement, and the Security Agreement. (*See* Comp. Ex. B [ECF No. 37–2]: Debenture § 6.02; Securities Purchase Agreement ¶ 9(a); Security Agreement § 8.7). Second, Plaintiff recently filed suit against its former investment manager, among others, in Miami state court, which means that Plaintiff will be litigating in Florida regardless of whether the present action is transferred. (*See* Resp. 6 n. 5). Third, Hartman and Montoya are parties to related proceedings in New York, wherein they successfully argued for enforcement of a similar forum selection clause designating New York as the appropriate forum.[1] (*See id.* 6). Plaintiff argues these facts support denying Defendants' Motion to Transfer.

Thereafter, on June 8, 2012, Defendants filed their Reply [ECF No. 38]. The Court addresses the parties' legal arguments below.

## II. STANDARD

■ A motion to transfer venue is governed by 28 U.S.C. section 1404(a). *See Trace–Wilco, Inc. v. Symantec Corp.,* No. 08–80877–CIV, 2009 WL 455432, at *1 (S.D.Fla. Feb. 23, 2009). Under section 1404(a), "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). "The standard for transfer under 28 U.S.C. § 1404(a) leaves much to the broad discretion of the trial court, and once a trial judge decides that transfer of venue is or is not justified, the ruling can be overturned only for clear abuse of discretion." *Trace–Wilco,* 2009 WL 455432, at *1 (citing *Brown v. Con-*

---

1. In support, Plaintiff submits various court filings and documents from these related proceedings. (*See* Exhibits E–I [ECF No. 37]). Defendants filed Objections to Plaintiff's Evidence ... ("Objections") [ECF No. 40], requesting the Court strike this evidence on various grounds. Because the Court does not consider these related proceedings in its transfer analysis, the Court does not address Defendants' Objections.

*necticut Gen. Life Ins. Co.*, 934 F.2d 1193, 1197·(11th Cir.1991)).

■■■ To prevail on a motion under section 1404(a), the movant must establish: (1) an adequate alternative forum is available, (2) the private interests of the parties weigh in favor of transfer, and (3) the public interest weighs in favor of transfer. *See Cellularvision Tech. & Telecomms., L.P. v. Cellco P'ship*, No. 06–60666–CIV, 2006 WL 2871858, at *2 (S.D.Fla. Sept. 12, 2006). The private factors to be considered include: (a) the plaintiff's initial choice of forum, (b) the convenience of the parties, (c) the convenience of the witnesses and the availability of process to compel the attendance of unwilling witnesses, (d) the relative ease of access to sources of proof and location of relevant documents, and (e) the financial ability to bear the costs of change. *See id.; see also Steifel Lab., Inc. v. Galderma Lab., Inc.*, 588 F.Supp.2d 1336, 1338–39 (S.D.Fla. 2008). The public factors to be considered include (a) the forum's familiarity with the governing law, (b) the forum's interest in adjudicating the dispute, (c) the burden of jury duty·on the forum's community, and (d) the relative docket congestion. *Cellularvision*, 2006 WL 2871858, at *4. "Ultimately, transfer can only be granted where the balance of convenience of the parties *strongly* favors the defendant." *Steifel*, 588 F.Supp.2d at 1339 (emphasis in original) (citations omitted).

## III. DISCUSSION

Defendants request the Court transfer Plaintiff's suit, pursuant to 28 U.S.C. section 1404(a), to the District of Nevada. Defendants argue that the forum selection clause in the Guaranty is permissive, and that it should be afforded little weight in the context of the Court's section 1404(a) analysis. Defendants further contend that the section 1404(a) factors favor transfer to the District of Nevada.

## A. The Forum Selection Clause

■■ The Court first addresses the forum selection clause in the Guaranty. "[E]nforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988) (Kennedy, J. concurring). For that reason, forum selection clauses in contracts are enforceable in federal courts, and should be considered in the context of a section 1404(a) analysis. *See P & S Bus. Machines, Inc. v. Canon USA, Inc.*, 331 F.3d 804, 807 (11th Cir.2003); *Mulligan v. Frank Found. Child Assistance Int'l*, 584 F.Supp.2d 1328, 1330 (M.D.Fla.2008). "The burden is on the party opposing the enforcement of the forum selection clause to show that the contractual forum is sufficiently inconvenient to justify retention of the dispute." *P & S Bus. Machines, Inc.*, 331 F.3d at 807 (11th Cir.2003) (citing *In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir.1989)).

■■■ Where a forum selection clause exists, the court must first assess whether the clause is mandatory or permissive. *See Slater v. Energy Servs. Group Int'l Inc.*, 634 F.3d 1326, 1330 (11th Cir.2011). "A permissive clause authorizes jurisdiction in a designated forum but does not prohibit litigation elsewhere. A mandatory clause, in contrast, 'dictates an exclusive forum for litigation under the contract.'" *Global Satellite Commc'n Co. v. Starmill U.K. Ltd.*, 378 F.3d 1269, 1272 (11th Cir. 2004) (quoting *Snapper, Inc. v. Redan*, 171 F.3d 1249, 1262 n. 24 (11th Cir.1999)). "Mandatory clauses contrast with and·are given more weight[ ] than permissive clauses, such as those in which one agrees

to 'submit' to jurisdiction in a certain venue." *Mulligan,* 584 F.Supp.2d at 1330 (quoting *Wai v. Rainbow Holdings,* 315 F.Supp.2d 1261, 1272 (S.D.Fla.2004)). A distinctive characteristic of a mandatory selection clause is the use of the term "shall," which prescribes a requirement. *See Global Satellite Commc'n Co.,* 378 F.3d at 1272; *Cornett v. Carrithers,* No. 11–14242, 2012 WL 687011, at *2 (11th Cir. Mar. 2, 2012).

Defendants request that the Court treat the forum selection clause at bar as permissive. Again, the forum selection clause reads:

> Forum Selection and Consent to Jurisdiction. Any litigation based on or arising out of, under, or in connection with, this Guaranty shall be brought and maintained exclusively in the federal courts of the State of Florida. Each Guarantor hereby expressly and irrevocably submits to the jurisdiction of the federal courts of the State of Florida for the purpose of any such litigation as set forth above and irrevocably agrees to be bound by any final judgment rendered thereby in connection with such litigation. Each Guarantor irrevocably consents to the service of process by registered mail, postage prepaid, or by personal service within or without the State of Florida. Each Guarantor hereby expressly and irrevocably waives, to the fullest extent permitted by law, any objection which Guarantor may have or hereafter may have to the laying of venue of any such litigation brought in any such court referred to above and any claim that any litigation has been brought in an inconvenient forum....

(Guaranty 4).

Defendants assert the foregoing provision is either permissive, or, at the very least, ambiguous, and that the Court should construe the ambiguity in their favor. Defendants stake their argument on *Land–Cellular Corp. v. Zokaites,* No. 05–23168–CIV, 2006 WL 3039964, at *6 (S.D.Fla. Sept. 26, 2006), where the court deemed the following language permissive:

> THE DEBTOR IRREVOCABLY SUBMITS AND CONSENTS TO THE JURISDICTION OF ANY COURT OF THE STATE OF PENNSYLVANIA LOCATED IN ALLEGHENY, AND WAIVES ANY AND ALL OBJECTIONS TO JURISDICTION OR VENUE THAT ANY SUCH PARTY MAY HAVE UNDER THE LAWS OF THE STATE OF FLORIDA OR OTHERWISE IN THOSE COURTS IN ANY SUCH SUIT, ACTION, OR PROCEEDING.

*Id.* (capitalization in original). The *Land Cellular* Court reasoned that this clause was permissive because although it "permit[ted] the creditor to bring suit in the State of Pennsylvania without allowing the debtor to object," the clause "d[id] not go further and preclude suit in another forum." *Id.* Defendants thus argue that because the forum selection clause at bar has similar language—i.e., each Guarantor "irrevocably submits" to jurisdiction in Florida, "irrevocably consents" to service of process in Florida, and "irrevocably waives" objections to venue in Florida—the Court should find that the forum selection clause in this case is permissive too. Plaintiff disagrees, however, arguing that the forum selection clause states an unambiguous command—that litigation over the Guaranty "*shall* be brought and maintained *exclusively* in the federal courts of Florida" (Guaranty 4 (emphasis added))—and that under Eleventh Circuit precedent this type of language is the hallmark of a mandatory forum selection clause (*see* Resp. 8 (collecting cases)).

The Court agrees with Plaintiff. First, Defendants' reliance on *Land–Cellular* is

misplaced because Defendants ignore the earlier part of the opinion where the court explained that when "a clause dictates an 'exclusive forum' for litigation under the contract," "the forum selection clause is mandatory." *Land–Cellular Corp.*, 2006 WL 3039964, at *5 (quoting *Snapper, Inc.*, 171 F.3d at 1262 n. 24). While the forum selection clause in *Land–Cellular* contained no such language, the forum selection clause at issue here does. (*See* Guaranty 4 ("Any litigation based on or arising out of, under, *or in connection with*, this Guaranty *shall* be brought and maintained *exclusively* in the federal courts of the State of Florida.") (emphasis added)).

■ Second, the Eleventh Circuit has clearly specified that "the use of the term 'shall' is one of requirement," and this is the very language the forum selection clause at bar contains. *Slater*, 634 F.3d at 1330; *see Global Satellite Commc'n Co.*, 378 F.3d at 1272; *Cornett*, 465 Fed.Appx. at 843–44. The Court rejects Defendants' invitation to view the forum selection as ambiguous; the fact that the forum selection clause subsequently clarifies that the Guarantors must also submit to jurisdiction, consent to service of process, and waive objections to venue in Florida, does nothing to undercut the overarching mandate that litigation arising out of the Guaranty "shall" be maintained "exclusively" within Florida's federal court system. *See Slater*, 634 F.3d at 1330 (citing *Belize Telecom, Ltd. v. Belize*, 528 F.3d 1298, 1307 & n. 11 (11th Cir.2008)) ("Under general contract principles, the plain meaning of a contract's language governs its interpretation."). Thus, because the forum selection clause expressly requires that all claims arising under the Guaranty be litigated in Florida, the Court deems it mandatory.

■ The next question, then, is whether the mandatory forum selection clause should be enforced. "Forum-selec-

tion clauses are presumptively valid and enforceable" absent a "strong showing that enforcement would be unfair or unreasonable under the circumstances." *Krenkel v. Kerzner Int'l Hotels Ltd.*, 579 F.3d 1279, 1281 (11th Cir.2009) (internal quotation marks and citations omitted). Under Eleventh Circuit precedent, a forum selection clause can " 'be invalidated when: (1) its formation was induced by fraud or overreaching; (2) the plaintiff would be deprived of its day in court because of inconvenience or unfairness; (3) the chosen law would deprive the plaintiff of a remedy; or (4) enforcement of the clause would contravene public policy.' " *Slater*, 634 F.3d at 1331 (quoting *Krenkel*, 579 F.3d at 1281). Defendants never address these factors in their Motion, and more generally, do not appear to assert the forum selection clause should be invalidated. Because the burden of invalidating a forum selection clause falls on the moving party, Defendants have conceded the point. *See Third Ave. Trust v. Suntrust Bank*, 163 F.Supp.2d 215, 220–21 (S.D.N.Y.2001) ("The burden of the . . . [invalidity] inquiry falls on the moving party, who must demonstrate exceptional facts explaining why [t]he[y] should be relieved from [t]h[eir] contractual duty.") (quotation marks and citation omitted). The Court therefore finds that the Guaranty's mandatory forum selection clause is enforceable.

**B. 28 U.S.C. § 1404(a)**

That a forum selection clause is mandatory and enforceable does not compel a federal court to enforce it. Pursuant to a motion to transfer brought under section 1404(a), the Court has the discretion to transfer an action to another division or district where it might have been brought if the convenience of the parties and witnesses, and the interests of justice support transfer. *See* Charles A. Wright & Arthur

R. Miller, FEDERAL PRACTICE AND PROCEDURE § 3803.1 (3d ed. 2007) ("[A] federal court sitting in diversity or federal question jurisdiction should take ... [a forum selection] clause into account only as one element in the balancing test required by Section 1404(a) ...."). As the Supreme Court has explained:

> section 1404(a) directs a district court to take account of factors other than those that bear solely on the parties' private ordering of their affairs. The district court also must weigh in the balance the convenience of the witnesses and those public-interest factors of systemic integrity and fairness that, in addition to private concerns, come under the heading of "the interest of justice." *It is conceivable in a particular case, for example, that because of these factors a district court acting under § 1404(a) would refuse to transfer a case notwithstanding the counterweight of a forum-selection clause ....*

*Stewart Org., Inc.*, 487 U.S. at 30–31, 108 S.Ct. 2239 (citations omitted and emphasis added).

 And yet, while it is possible that under particular circumstances the section 1404(a) factors would support a court's non-enforcement of a mandatory forum selection clause, under Eleventh Circuit precedent the bar that must be met is exceedingly high. *See P & S Bus. Machines, Inc.*, 331 F.3d at 808 (noting that "[t]he type of ... situation in which judicial enforcement of a contractual choice of forum clause would be improper" is "exceptional"). Thus, in the context of a court's section 1404(a) analysis, a mandatory forum selection clause is " '*a significant* factor that figures *centrally* in the district court's calculus.' " *P & S Bus. Machines, Inc.*, 331 F.3d at 807 (quoting *Stewart Org., Inc.*, 487 U.S. at 29, 108 S.Ct. 2239) (emphasis in original). So " 'while other

factors might 'conceivably' militate against a transfer ... the venue mandated by a choice of forum clause rarely will be outweighed by other 1404(a) factors.' " *P & S Bus. Machines, Inc.*, 331 F.3d at 807 (quoting *In re Ricoh Corp.*, 870 F.2d at 573). As a practical matter, this means that "the financial difficulty ... a party might have in litigating in the selected forum" can never be a sufficient ground for "refus[ing] to enforce a valid forum selection clause." *Id.* at 807. In light of the foregoing legal landscape, the Court now considers Defendants' section 1404(a) arguments.

*i. Is the District of Nevada an Adequate Forum?*

 To prevail on a motion to transfer, "a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The moving party must therefore establish that an alternative forum is available. *See Cellularvision*, 2006 WL 2871858, at *2. An alternative forum exists where "jurisdiction is proper, venue is proper and the parties are amenable to service of process in the transferee forum." *Id.* (citation omitted). Here, Defendants have established that the District of Nevada meets each of these requirements.

 First, this Court's subject matter jurisdiction over the Amended Complaint is based on diversity of citizenship pursuant to 28 U.S.C. section 1332, and the same would be true if this case were brought in the District of Nevada. *See Meterlogic, Inc. v. Copier Solutions, Inc.*, 185 F.Supp.2d 1292, 1300 (S.D.Fla.2002). Second, under 28 U.S.C. section 1391 venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the

subject of the action is situated...." As Defendants highlight,

> a substantial part of the events or omissions giving rise to this action occurred in th[e] District [of Nevada]. This action stems from an alleged default by Lumax, a Nevada corporation, on its obligations under certain Loan Documents. Lumax entered into these Loan Documents with Trafalgar to fund the purchase of a casino located in Nevada. Specifically, the alleged breach of the Personal Guaranty arose out of activities in the District of Nevada where Lumax is incorporated, where the subject Property is located, where the Deed in Lieu was executed and recorded and where the alleged breach by Lumax of the underlying Loan Documents occurred. Plaintiff does not dispute these facts.

(Repl. 3).[2] Finally, Defendants "would be amenable to service of process issued by a ... [Nevada] court since ... [they] do[ ] business" in Nevada, and because they themselves are suing the Plaintiff, among others, in Nevada state court. *Jewelmasters, Inc. v. May Dept. Stores Co.*, 840 F.Supp. 893, 894–95 (S.D.Fla.1993). Thus, the Court finds that Plaintiff's suit could have been brought in the District of Nevada.

### ii. Plaintiff's Choice of Forum and Convenience of the Parties

Because the District of Nevada constitutes an adequate alternative forum, the Court proceeds to conduct the section 1404(a) factor analysis. At the outset, two important points bear notice. First, the Southern District of Florida is Plaintiff's choice of forum, and as the Eleventh Circuit has explained, "[t]he plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations." *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir.1996) (quotation marks and citation omitted). Second, by committing themselves to the mandatory forum selection clause, Defendants have waived their right to assert their own convenience as a factor favoring transfer to the District of Nevada. (*See* Resp. 15 (citing *Crystal Entm't & Filmworks, Inc. v. Jurado*, No. 08–60125–CIV, 2008 WL 4980345, at *3 (S.D.Fla. Nov. 20, 2008) ("Defendants' agreement to a valid and mandatory forum-selection clause may be treated as a waiver by the moving party of its right to assert its own convenience as a factor favoring a transfer from the agreed upon forum") (citation omitted))); *see, e.g., Plum Tree, Inc. v. Stockment*, 488 F.2d 754, 758 n. 7 (3d Cir.1973) ("A valid forum-selection agreement may be treated as a waiver by the moving party of its right to assert its own convenience as a factor favoring a transfer from the agreed upon forum or as one element to be considered in weighing the interest of justice."); *FUL Inc. v. Unified School Dist., No. 204*, 839 F.Supp. 1307, 1311 (N.D.Ill.1993) ("The presence of a valid forum selection clause prevents a defendant from asserting its own inconvenience as a reason supporting its motion to transfer.") (citation and footnote call number omitted).

Having eliminated party convenience from the Court's section 1404(a) calculus,

---

**2.** Although Plaintiff argues that a Nevada venue is improper *because of* the forum selection clause, this argument collapses the distinction between the forum selection clause enforceability analysis and the section 1404(a) transfer analysis. (*See* Resp. 14). "A forum selection clause does not, by itself, render venue in an alternative forum improper, as venue is improper only if the statutory venue requirements of 28 U.S.C. § 1391 have not been satisfied." *Eres N.V. v. Citgo Asphalt Ref. Co.*, 605 F.Supp.2d 473, 479 (S.D.N.Y.2009) (citing *GMAC Commercial Credit, LLC v. Dillard Dep't Stores, Inc.*, 198 F.R.D. 402, 405 (S.D.N.Y.2001)).

all that remains of Defendants' filings are their arguments based upon: (1) the convenience of the non-party witnesses and the availability of process to compel their attendance; (2) the relative ease of access to sources of proof and location of relevant documents; and (3) the judicial economy and administration. The Court addresses these arguments in turn.

### iii. Witness Convenience and Compulsory Process

Defendants argue that the convenience of the witnesses and the availability of process to compel the attendance of unwilling witnesses support transfer to the District of Nevada. Specifically, Defendants assert there are seven non-party witnesses residing in Nevada with "knowledge of facts that are necessary to a complete determination of the facts and issues present in th[eir] case," and there are no non-party witnesses located in Florida. (Repl. 7; *see* Mot. 9–10; Defendants' Rule 26 Disclosure [ECF No. 32–5] (explaining the materiality of each witness)). Defendants further contend that these "non-party, material, Nevada witnesses would not be subject to a subpoena under Fed.R.Civ.P. 45(b)(2) issued by this District Court." (Repl. 7; *see* Mot. 12). Plaintiff does not appear to dispute either of these points, but asserts that "[i]n the event [ ] the testimony of any Nevada witness is necessary, the witness can be subpoenaed for deposition," while more generally arguing that the convenience of the seven non-party witnesses is not alone sufficient to outweigh the mandatory and enforceable forum selection clause at bar. (Resp. 17).

■■■ The question the parties' filings raise, then, is not *whether* these factors weigh in Defendants' favor, but rather, *how much weight* the Court should afford them. Generally speaking, the convenience of non-party witnesses and the abili-

ty to assert compulsory process over them are significant factors in determining whether a motion for transfer should be granted. *See Cellularvision,* 2006 WL 2871858, at *3 (citing *Meterlogic, Inc.,* 185 F.Supp.2d at 1301). However, because Defendants have failed to establish, or even raise, key components necessary to establish each of these considerations, the Court concludes that they only provide modest support for transfer.

■■■ Consider first the compulsory process factor. It is one thing to identify where the Court's subpoena power ends, and it is quite another to establish the impact that this lack of jurisdiction will have on a particular action. The burden therefore falls upon the moving party to make a showing of "whether, though inconvenienced, the enumerated witnesses would attend a trial." *Mason v. Smithkline Beecham Clinical Lab.,* 146 F.Supp.2d 1355, 1362 (S.D.Fla.2001). Here, however, "Defendants have not suggested that these [non-party] witnesses would be unwilling to appear of their own accord." *Id.* Because Defendants have not made this showing, this factor does not add much to Defendants' Motion. *See Microspherix LLC v. Biocompatibles, Inc.,* No. 9:11–CV–80813–KMM, 2012 WL 243764, at *5 (S.D.Fla. Jan. 25, 2012) (noting that the compulsory process factor was not significant where the moving part did not "indicat[e] that ... [the non-party witness was] actually unwilling to testify.").

Second, even assuming the non-party witnesses identified by Defendants would refuse to attend trial in the Southern District of Florida, Defendants have not explained why their "testimony cannot be presented adequately via a deposition." *MacMillan Bloedel, Inc. v. Hamric Transp., Inc.,* 617 F.Supp. 447, 449 (N.D.Ga.1985); *see Flowers Indus., Inc. v. Bakery & Confectionery Union & Indus.*

*Int'l Pension Fund,* 565 F.Supp. 286, 293 (N.D.Ga.1983). Indeed, although Defendants have asserted the substantial cost Defendants would incur in traveling to take non-party witness depositions in Nevada, they have failed to articulate the prejudicial effect that presenting such testimony via depositions would have on their case. (*See* Repl. 7). Furthermore, the vague explanation as to the materiality of each non-party witness contained in Defendants' Rule 26 Disclosures does not aid the Court in making this determination. (*See id.* 1–5). "Therefore, the inconvenience ... of these witnesses, while relevant, does not greatly support the motion for transfer." *Mason,* 146 F.Supp.2d at 1362.

### iv. Access to Sources of Proof

Defendants next argue that access to sources of proof factor supports transfer to the District of Nevada. First, Defendants assert that the "books and records being used to litigate in the Nevada action are located in Nevada," and that "requiring Defendants to make the identical books and records available to Plaintiff in this action while *simultaneously* making them available to Trafalgar in the Nevada action will prove difficult, if not impossible." (Mot. 17 (emphasis in original)). Second, Defendants argue that "since ... [Plaintiff], through its Nevada counsel, has been litigating this case in Nevada since March 2011, all documents likely to be material to the prosecution of this case appear to be located in or near Las Vegas, Nevada." (*Id.*). Specifically, "the Nevada court's docket appears to house a litany of motions, oppositions, orders, declarations, ex parte applications, affidavits, responses, stipulations, counterclaims, etc., filed by the parties." (*Id.*) Finally, Defendants argue that "any necessary valuation of the [P]roperty or ... [G]uaranty for purposes of calculating damages in either action would need to be done in Nevada, as well as a valuation of Defendants' lost profits and damages resulting from Lumax's alleged default of Loan Documents." (*Id.*). Plaintiff does not address these arguments; consequently, the Court treats them as though they have been conceded.[3]

The question that remains, then, is just how much weight this factor should be afforded in the context of the section 1404(a) analysis? The Court finds that it is entitled to minimal weight. First, Defendants' assertion as to the near-impossibility of making the same documents available to Plaintiff in two separate cases is unpersuasive. Defendants have not explained why a Xerox, scanning, or electronic copying cannot accomplish the otherwise unremarkable task of making duplicate copies available to Plaintiff. Furthermore, because Plaintiff (in the federal case) and "Trafalgar" (in the Nevada action) are the same party, coordinating a transfer of documents with respect to each proceeding should not prove to be exceedingly difficult. (*See* Mot. 13).

Second, the Court is not persuaded by the prospective burden Defendants assert exists in requiring the transportation of documents from Nevada to Florida "[g]iven the ease with which documents can be transported in the technological age." *Matthews v. Whitewater W. Indus., Ltd.,*

---

3. Notwithstanding Plaintiff's apparent concession, the Court notes that document production is not as onerous as it once was, and scores of file boxes filled with paper in Nevada need not travel across the country to Miami, but may be transported via electronic format. *See Steifel Labs., Inc. v. Galderma*

*Labs., Inc.,* 588 F.Supp.2d at 1340 (finding defendant's burden of document production did not warrant transfer because "in the current world of expedited transfer of information, assembly and production of any necessary information can be produced just as easily in this District" as in another district).

No. 11–24424–CIV, 2012 WL 1605184, at *7 n. 6 (S.D.Fla. May 8, 2012). Third, the Property, Guaranty, and other valuations Defendants suggest would be better facilitated by a Nevada forum simply raise a matter of cost. By transferring the case to the District of Nevada, the parties might be able to avoid having to fly expert witnesses on valuation to Miami, or alternatively, from flying to Nevada to take the deposition of those experts. However, given that "the financial difficulty ... a party might have in litigating in the selected forum" can never be a sufficient ground for "refus[ing] to enforce a valid forum selection clause," *P & S Bus. Machines, Inc.*, 331 F.3d at 807, this argument also fails to persuade.

#### v. The Interests of Justice

Defendants' remaining arguments focus upon the economic and administrative benefits that transfer to the District of Nevada would bestow upon the federal judiciary. Defendants argue first that trying "two separate actions stemming from the same underlying facts" in two separate states would "cause a needless waste of judicial resources," which might otherwise be avoided by transfer. (Mot. 16). Defendants further assert that because the resolution of the state court action may render the federal action moot, or have *res judicata* effect as to any breach of the Guaranty, administrative concerns also favor transfer. (*See id.* 17; Repl. 8). Plaintiff makes the point that

> [t]ransfer of this case will not preserve resources as there would still be two separate proceedings. Maintaining two separate actions will still require the parties to travel on different occasions to attend mediations, depositions, and trials for two separate out of state cases. Nor would transfer ameliorate any concerns the Defendants purport to have regarding inconsistent and piecemeal litigation.

The action on the Guaranty is separate and distinct from the Nevada state court action.

(Resp. 18).

The Court agrees with Plaintiff. It is unclear how transferring this suit to the District of Nevada will conserve judicial resources. The present action has been pending on the Court's docket for more than seven months. Regardless of whether it is ultimately tried in the Southern District of Florida or in the District of Nevada, there will be parallel proceedings: one action in state court and the other—the present action—in federal court. Adjudicating these two disputes will thus require two different judges and two separate sets of filings, no matter which venue the case is tried in. Under either scenario, then, the expenditure of federal judicial resources appears to be identical, but for the time and resources the undersigned has already invested.

Likewise, Defendants' argument as to the administrative benefit of transfer to the District of Nevada also fails to persuade. Defendants make much of the possibility that the Nevada state court proceeding will produce a favorable result. Whatever that result may be, it will surely have an identical effect on Plaintiff's federal action independent of where the federal suit is prosecuted.

For its part, Plaintiff advances a sound argument with respect to the interests of justice. Specifically, Plaintiff asserts that

> [t]he Guaranty provides that Florida law governs the parties' contractual relationship and the Guarantors' obligations. While Nevada courts are likely capable of construing Florida law, federal courts in Florida engage in this exercise with far greater frequency and can be expect-

ed to have developed more expertise in the areas of law concerned.

(Resp. 18) (citing *Food Mktg. Consultants, Inc. v. Sesame Workshop*, No. 09–61776–CIV, 2010 WL 1571206, at *10 (S.D.Fla. Mar. 26, 2010) ("While this [c]ourt [in the Southern District of Florida] is capable of construing New York law, federal courts in New York engage in that exercise with far greater frequency and, thus, can fairly be expected to have developed some expertise in that area.")). And while a breach of contract claim is not the type of legal issue that demands "a heightened level of expertise" (Repl. 9), this goes only to the weight, and not to the relevance of the choice of law provision to the section 1404(a) analysis. Indeed, "[w]here there are state law claims, the forum's familiarity with governing law supports retention of the action." *Am. Eagle Outfitters, Inc. v. Tala Bros. Corp.*, 457 F.Supp.2d 474, 479 (S.D.N.Y. 2006) (quotation marks and citation omitted). And once this fact is considered in light of the time the present action has been pending on the Court's docket it becomes clear that the interests of justice modestly support retaining jurisdiction.

### vi. Section 1404(a) Balancing

In summation, the mandatory forum selection clause is " 'a *significant* factor that figures *centrally* in the district court's calculus,' " and therefore strongly favors retaining jurisdiction. *P & S Bus. Machines, Inc.*, 331 F.3d at 807 (quoting *Stewart Org., Inc.*, 487 U.S. at 29, 108 S.Ct. 2239). By agreeing to the mandatory forum selection clause, Defendants waived their right to assert the party convenience factor. Defendants' witness convenience and compulsory process factor arguments only modestly support transfer because Defendants have not adequately explained why non-party witnesses will be unlikely to attend trial in Florida, or why presenting testimony via deposition will be detrimental to the defense. The Defen-

dants' access-to-sources-of-proof arguments minimally support transfer given the technological ease of duplicating and "transporting" documents. Lastly, the interests of justice modestly favor a Florida forum because Florida law applies and the action has been pending on the Court's docket for some time.

Viewed collectively, the weight of Defendants' section 1404(a) factors falls exceedingly short of the "exceptional" circumstances necessary to justify transfer where a mandatory forum selection clause exists. *P & S Bus. Machines, Inc.*, 331 F.3d at 807; *see Mulligan*, 584 F.Supp.2d at 1330 (enforcing mandatory venue provision because moving party did not meet "the heavy burden of showing that the clause [wa]s unreasonable—as, for example, when a plaintiff would be virtually denied an opportunity to litigate in the selected forum because of a special hardship") (citation omitted). Although convenience of the non-party witnesses and compulsory process are important factors to consider, they are insufficient to tilt the balance in Defendants' favor. *See Bovie Med. Corp. v. Livneh*, No. 8:10–CV–1527–T–24EAJ, 2010 WL 5297172, at *7 (M.D.Fla. Dec. 20, 2010) (denying motion to transfer where there was a mandatory and enforceable forum selection clause notwithstanding witness convenience).

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** that Defendants' Motion to Transfer Action from the United States District Court for the Southern District of Florida to the United States District Court for the District of Nevada, Las Vegas Division [ECF No. 32] is **DENIED**.