RODOLFO RUIZ, UNITED STATES DISTRICT JUDGE
THIS CAUSE comes before the Court on Defendants, United States Department of Homeland Security, United States Coast Guard, and Admiral Karl L. Schultz's, Motion to Transfer Venue filed on May 9, 2019 [ECF No. 15] ("Motion"). In their Motion, Defendants seek to transfer this case to either the United States District Court for the District of Columbia or the Northern District of New York. See Mot. at 3-4. Plaintiff Matthew J. Hight filed a Response in Opposition to the Motion on May 23, 2019 [ECF No. 26] ("Response"), to which Defendants filed a Reply on June 6, 2019 [ECF No. 32] ("Reply").[1] The Court, having reviewed the Motion, Response, and Reply, being fully advised in the premises, and seeking to build a bridge over troubled water, it is
ORDERED AND ADJUDGED that Defendants' Motion to Change Venue is GRANTED. The Clerk of Court is instructed to TRANSFER this case to the United States District Court for the District of Columbia and mark the case as CLOSED in this District.
BACKGROUND
This case involves claims for declaratory and injunctive relief under the Administrative Procedure Act ("APA") and the Declaratory Judgment Act. See Complaint [ECF No. 1] at 1. Plaintiff Matthew J Hight is a sailor who seeks to pilot ships on Lake Ontario and the Saint Lawrence River. Compl. ¶¶ 3, 10. The Great Lakes Pilotage Act of 1960 ("Act") regulates international shipping on the Great Lakes, which is defined to include the relevant part of the St. Lawrence River. Id. at ¶ 17 *1182 (citing 46 U.S.C. §§ 9301 - 9308 ). Under the Act, all U.S. vessels engaged in foreign trade and foreign vessels must, with some exceptions, engage a "Registered Pilot" to direct the navigation of the vessel in waters of the Great Lakes designated by the President, commonly called "designated waters." Id. at ¶ 18. The St. Lawrence River has been so designated, thus only Registered Pilots may direct the navigation of foreign vessels on the river. Id. at ¶ 19. Alternatively, although Lake Ontario has not been designated by the President, a Registered Pilot must still be aboard and available to direct the navigation of the vessel. Id. ¶ 21. Plaintiff seeks to become a Registered Pilot to navigate the waters of Lake Ontario and the St. Lawrence River. Id. at ¶ 22.
For purposes of this Order, the Court need not describe the lengthy procedural history leading up to the challenged administrative decision. In summation, Plaintiff was denied a pilotage license by the SLSPA, which has been authorized by the United States Coast Guard ("Coast Guard") as a "voluntary association of United States registered pilots, to form a pilotage pool" for the area that Plaintiff desires to work. Id. at ¶¶ 40-41, 124. After unsuccessfully petitioning the SLSPA for reconsideration of the denial of his application for a pilotage license, Plaintiff sent a number of letters to the Coast Guard to contest the denial. Id. at ¶ 153. On July 18, 2018, the Coast Guard sent Plaintiff a letter denying his challenge. Id. at ¶ 163. On August 15, 2018, Plaintiff timely appealed the Coast Guard's determination pursuant to 46 C.F.R. § 1.03-15. Id. at ¶ 173. On October 19, 2018, the Coast Guard sent Plaintiff a letter denying his appeal. Id. at ¶ 175. This letter constituted a "final agency action" under the APA. Id. at ¶ 176.
Plaintiff has brought this action in the Southern District of Florida-where he resides-seeking the following relief: determination that he complied with all requirements for a pilotage license under the Act; a finding that the Coast Guard violated his procedural due process rights in denying his administrative appeal without providing him the chance to create an adequate record; and a declaration that the Act does not permit the Coast Guard to delegate control over the issuance of pilotage licenses to the SLSPA. Id. at 49-50. Additionally, Plaintiff asks the Court to order Defendants to allow Plaintiff to sit for a required written exam and, if he passes said exam, issue him a Certificate of Registration pursuant to 46 C.F.R. § 401.220(c), and direct the SLSPA to allow him to work as a pilot on Lake Ontario and the St. Lawrence River. Id. at 50.
Defendants seek to transfer this case to either the United States District Court for the District of Columbia, where the licensing decision was ultimately made, or the Northern District of New York, where Plaintiff intends to work if his claims are successful. Mot. at 1-2. The Motion maintains that the only nexus this case has to the Southern District of Florida is Plaintiff's residence, and transfer is therefore warranted. Id.
LEGAL STANDARD
"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a) ; see also Nalls v. Coleman Low Fed. Inst. , 440 F. App'x 704, 706 (11th Cir. 2011) (citations omitted). Courts have broad discretion under section 1404(a). See England v. ITT Thompson Indus., Inc. , 856 F.2d 1518, 1520 (11th Cir. 1988) (citation omitted);
*1183 Osgood v. Disc. Auto Parts, LLC , 981 F. Supp. 2d 1259, 1263 (S.D. Fla. 2013) (stating the "standard for transfer under 28 U.S.C. § 1404(a) leaves much to the broad discretion of the trial court"); Motorola Mobility, Inc. v. Microsoft Corp., 804 F. Supp. 2d 1271, 1275 (S.D. Fla. 2011) (holding the court has "broad discretion" to determine whether "transfer is appropriate.").
To determine whether a case should be transferred pursuant to section 1404, courts apply a two-prong test. See Rothschild Storage Retrieval Innovations, LLC v. Sony Mobile Commc'ns (USA) Inc. , No. 14-CIV-22652, 2015 WL 224952, at *2 (S.D. Fla. Jan. 15, 2015) (citations omitted). First, courts look to whether the case could have been brought in the alternative venue. Id. (citation omitted). Under this first prong, courts are tasked with determining whether an action "might have been brought" in any court that has subject-matter jurisdiction; where venue is proper; and where the defendant is amenable to process issuing out of the transferee court. Carucel Investments, L.P. v. Novatel Wireless, Inc. , 157 F. Supp. 3d 1219, 1223 (S.D. Fla. 2016) (citing Windmere Corp. v. Remington Prods., Inc. , 617 F. Supp. 8, 10 (S.D. Fla. 1985) ).
Second, courts evaluate whether "convenience and the interest of justice require transfer." Rothschild, 2015 WL 224952, at *2 (internal quotation marks and citation omitted). Under the second prong, courts "weigh various factors" implicating both public and private interests. Windmere , 617 F. Supp. 8 at 10. These factors include:
(1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.
Manuel v. Convergys Corp. , 430 F.3d 1132, 1135 n.1 (11th Cir. 2005) (citation omitted).
ANALYSIS
Applying the aforementioned test, the Court first addresses whether this case could have been brought in the District of Columbia. The Court then analyzes whether transfer serves the convenience of the parties and the interests of justice. Because Defendants satisfy their burden on both prongs, transfer to the District of Columbia is appropriate under section 1404(a). The principles compelling the Court's conclusion are explained below.
A. The action could have been brought in the District of Columbia.[2]
A case "might have been brought in a transferee district if that district has subject matter jurisdiction over the action, venue is proper, and the parties are amenable *1184 to service of process in the transferee forum." Implant Seminars, Inc. v. Lee , No. 18-23097-CIV, 2019 WL 1979365, at *4 (S.D. Fla. May 3, 2019) (quoting Game Controller Tech. LLC v. Sony Computer Entm't Am. LLC , 994 F. Supp. 2d 1268, 1272-73 (S.D. Fla. 2014) ). Here, while the parties disagree over whether the case could have been brought in the Northern District of New York, it is undisputed that the case could have been brought in the District of Columbia. See Resp. at 4 (citing 28 U.S.C. § 1391(e)(1)(A) ) ("This case could have been filed in the District of Columbia since Defendants reside in that district.").
Indeed, the District of Columbia has subject matter jurisdiction over Plaintiff's claims under 28 U.S.C. § 1331 and 5 U.S.C. § 704. Moreover, venue is proper in the District of Columbia. As Defendants indicate and Plaintiff does not dispute, venue is proper in an APA case "in any judicial district in which (A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (C) the plaintiff resides if no real property is involved in the action." 28 U.S.C. § 1391(e)(1) (stating that venue is proper in "[a] civil action in which a defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority, or an agency of the United States, or the United States"). Here, all the Defendants reside in the District of Columbia and the licensing decision that Plaintiff challenges was made by Defendants in the District of Columbia. Mot. at 2. Finally, the United States District Court for the District of Columbia has personal jurisdiction over Defendants as they all reside in the District of Columbia. Id.
Because subject matter jurisdiction would exist over the case, venue would be proper, and Defendants would be amenable to service of process, Plaintiff's case could have been brought in the District of Columbia. Thus, the District of Columbia is an adequate alternative forum, and the Court must turn to the second prong of the section 1404(a) analysis. See Rothschild Storage Retrieval Innovations, LLC v. LG Electronics, Inc. , 2015 WL 11233067, at *2 (S.D.Fla. June 3, 2015).
B. The convenience of the parties and the interests of justice weigh strongly in favor of transferring this case to the District of Columbia.
Defendants bear the burden of demonstrating entitlement to transfer. See In re Ricoh Corp. , 870 F.2d 570, 573 (11th Cir. 1989) ("[I]n the usual motion for transfer under section 1404(a), the burden is on the movant to establish that the suggested forum is more convenient."). "Ultimately, transfer can only be granted where the balance of convenience of the parties strongly favors the defendant." Steifel Labs., Inc. v. Galderma Labs., Inc., 588 F. Supp. 2d 1336, 1339 (S.D. Fla. 2008) (citing Robinson v. Giarmarco & Bill, P.C. , 74 F.3d 253, 260 (11th Cir.1996) ). As set forth below, various factors indicate that the balance of convenience weighs heavily in favor of transfer.
1. Plaintiff's choice of forum vs. the locus of operative facts
The central tension between the parties here is whether the Court should place more emphasis on Plaintiff's choice of forum or the locus of operative facts in performing the 1404(a) analysis. Plaintiff maintains choice of forum is "the most important" factor in determining whether to transfer a case to another district, because Plaintiff resides in the Southern District of Florida. Resp. at 3; 6-11 (stating *1185 that in a section 1404(a) analysis "[t]he paramount factor is where plaintiff filed the case"). Defendants counter that an APA licensing review case "should be transferred to the District of Columbia, the location where the licensing decision was made." Mot. at 5. The Court will address these issues in turn.
"[F]ederal courts traditionally have accorded a plaintiff's choice of forum considerable deference." In re Ricoh Corp. , 870 F.2d at 573 (citing Gulf Oil Corp. v. Gilbert , 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055 (1947) ). However, "where the operative facts underlying the cause of action did not occur within the forum chosen by the Plaintiff, the choice of forum is entitled to less consideration." Motorola Mobility , 804 F. Supp. 2d at 1276 (quoting Windmere , 617 F. Supp. at 10 ); see also Animal Legal Def. Fund , 2013 WL 120185, at *4 (citing Pac. Car & Foundry Co. v. Pence , 403 F.2d 949, 953-54 (9th Cir. 1968) ) ("[W]here the operative facts have not occurred within the forum of original selection and that forum has no special interest in the parties or subject matter, the plaintiff's choice of venue merits less deference."). Here, Plaintiff's only nexus to the Southern District of Florida is his residence-while all the relevant licensing decisions were made in the District of Columbia by residents of the District of Columbia. Moreover, the licensing in question relates to Plaintiff's work as a pilot on Lake Ontario and the St. Lawrence Seaway. Therefore, Plaintiff's contention that his choice of forum should be given greater weight is unavailing.
The scales are further tilted in favor of transfer given the locus of operative facts for Plaintiff's claims. See Implant Seminars , 2019 WL 1979365 at *5 ("[T]he locus of operative facts is a primary factor in determining whether to transfer venue.") (quoting CYI, Inc. v. Ja-Ru, Inc. , 913 F. Supp. 2d 16, 19 (S.D.N.Y. 2012) ). In APA cases, "courts generally focus on where the Decision making process occurred to determine where the claims arose." Gulf Restoration Network v. Jewell , 87 F. Supp. 3d 303, 313 (D.D.C. 2015) (quoting Nat'l Ass'n of Home Builders v. EPA , 675 F. Supp. 2d 173, 179-80 (D.D.C. 2009) ). "Where the decision making process was concentrated in a particular city or state, courts have found this factor to weigh heavily in the transfer analysis." Id. It is undisputed that all relevant acts or omissions relating to the denial of Plaintiff's pilotage license took place in the District of Columbia. Mot. at 5 n.2 ("While the underlying facts relied upon in making the decision arose in the Northern District of New York ... the decision maker resided in the District of Columbia and all decisions were evaluated and reached there."); Resp. at 5-6 ("Although he trained and worked on Lake Ontario and the St. Lawrence River, all of the Defendant's relevant acts or omissions occurred in the District of Columbia and not the Northern District of New York."). Consequently, these factors, when taken together, weigh strongly in favor of transfer to the District of Columbia.
2. Convenience of the parties
Plaintiff argues that this District is convenient for him because he lives here, and the U.S. Government is fully capable of litigating the case in this District. Resp. at 13. However, Plaintiff makes no mention of how or why the District of Columbia would be an inconvenient forum. While Defendants bear the burden of proving that transfer is appropriate under section 1404(a), a review of the docket indicates that just as Defendants can capably litigate the case in this District, Plaintiff can capably litigate the case in the District of Columbia. Indeed, three of Plaintiff's *1186 four attorneys of record are located in Arlington, Virginia and two are members of the District of Columbia Bar. See [ECF Nos. 5, 19]. Given that the parties "would be required to engage in similar cross-country travel," they "are in a relatively similar situation" for purposes of this analysis. Advanced Aerodynamics, L.L.C. v. Unmanned Cowboys, LLC , No. 0:15-CV-62679-KMM, 2016 WL 8738383, at *4 (S.D. Fla. May 31, 2016). Thus, this factor is neutral.
3. Convenience of the witnesses and location of relevant documents
"The convenience of the witnesses is best served when witnesses are allowed to testify in the forum where they reside." Morrissey v. Subaru of Am., Inc., No. 1:15-cv-21106, 2015 WL 9583278, at *3 (S.D. Fla. Dec. 31, 2015) (citation omitted). Plaintiff correctly notes that Defendant has not identified any specific witnesses they intend to call or how those witnesses might be inconvenienced by having to testify in this District. Resp. at 14-15 (citing Gubarev v. Buzzfeed , Inc., 253 F. Supp. 3d 1149, 1164 (S.D. Fla. 2017) ) (holding convenience of witnesses factor was neutral because defendants "fail[ed] to identify each witness who likely would be called and fail[ed] to state the significance of their witnesses' testimony in seeking transfer."). Again, the Court finds this factor to be neutral.
As to the location of relevant documents, "[i]n a world with ... copy machines, email, overnight shipping, and mobile phones that can scan and send documents, the physical location of documents is irrelevant." Implant Seminars, 2019 WL 1979365 at *7 (quoting Microspherix LLC v. Biocompatibles, Inc. , No. 9:11-cv-80813, 2012 WL 243764, at *3 (S.D. Fla. Jan. 25, 2012) (alterations added)). Given that many of the relevant documents will already be part of the administrative record, see Resp. at 16, and the parties are fully capable of coordinating the transmission of documents, the Court also finds this factor to be neutral.
4. Public factors
The Court is confident that the relevant law can be competently applied in any of the proposed forums and thus finds this factor to be neutral as well. See City of W. Palm Beach v. United States Army Corps of Engineers , 317 F. Supp. 3d 150, 156 (D.D.C. 2018) (finding that the Southern District of Florida and the District of Columbia were equally capable and presumptively competent to decide issues of federal law, specifically as they relate to the APA).
As to other public factors, courts consider "administrative difficulties flowing from court congestion, the local interest in having localized controversies decided at home, the avoidance of unnecessary problems in conflict of laws or application of foreign law, and the unfairness in imposing jury duty on citizens in an unrelated forum." Implant Seminars , 2019 WL 1979365, at *8 (quoting Rothschild Connected Devices Innovations, LLC v. The Coca-Cola Company , 2016 WL 1546427, at *7 (S.D.Fla. April 15, 2016) ). Here, the Court finds that neither the residents of the Southern District of Florida nor those of the District of Columbia have a particularly strong interest in the outcome of this matter. Indeed, Defendants argue that the Northern District of New York is the only potential forum "with a localized interest in the resolution of this case." Mot. at 6. Moreover, this case does not present any issues pertaining to conflict of laws or the application of foreign law. See, e.g. Resp. at 18-19. And both the Southern District of Florida and the District of Columbia are undoubtedly very busy districts. Therefore, *1187 the Court finds the public interest factors to be neutral between both forums.
CONCLUSION
Given that this matter could have been brought in the transferee forum, and the interests of justice and convenience of the parties weigh heavily in favor of transfer, the Court concludes this case will navigate calmer waters in the United States District Court for the District of Columbia. While the Court is sensitive to Plaintiff's choice of forum, the only nexus this case has to the Southern District of Florida is Plaintiff's residence-a consideration that is provided less deference where, as here, the operative facts underlying the claim did not take place in Plaintiff's chosen forum.
Therefore, it is ORDERED and ADJUDGED as follows:
1. Defendant's Motion to Transfer Venue [ECF No. 15] is GRANTED .
2. The Clerk of Court is instructed to TRANSFER this case to the United States District Court for the District of Columbia and mark this case CLOSED in this District.
3. All pending motions are hereby DENIED AS MOOT.
DONE AND ORDERED in Chambers in Ft. Lauderdale, Florida, this 23rd day of June, 2019.

The St. Lawrence Seaway Pilots Association ("SLSPA") filed a Motion to Intervene [ECF No. 27] ("Motion to Intervene") and a Response in Support of Defendants' Motion to Transfer Venue [ECF No. 28] ("SLSPA Response"), to which Plaintiff filed a Response in Opposition [ECF No. 31]. The Court has not yet ruled on the Motion to Intervene and thus, did not consider the SLSPA Response or Plaintiff's Reply to the SLPSA Response for purposes of this Order.

The Court notes that Plaintiff makes a strong case as to why the case could not have been brought in the Northern District of New York. In response, Defendants cite Animal Legal Def. Fund v. U.S. Dep't of Agric. , No. CV 12-4407-SC, 2013 WL 120185, at *3 (N.D. Cal. Jan. 8, 2013), for the proposition that the district where the license is effective and operative is an appropriate venue in an APA challenge to a licensing decision. However, since the Court finds the parties agree that this case could have been brought in the District of Columbia and the convenience of the parties weighs heavily in favor of transferring the case there, it is unnecessary to perform the transfer analysis as it pertains to the Northern District of New York.